BUSH et al. v. MERRILL et al.
(No. 13–2588.)

(Commission of Appeals of Texas, Section B, Dec. 11, 1918.)

1. VENDOR AND PURCHASER ☞75—OBLIGATION TO PAY UNPAID PURCHASE MONEY—RESALE OR ABILITY TO RESELL AS CONDITION PRECEDENT.
   Under contract for sale of lots, resale or ability to resell at fixed prices *held* not a condition precedent to maturity of buyers' obligation to pay the unpaid purchase money.

2. VENDOR AND PURCHASER ☞75—FAILURE TO FIX TIME FOR PAYMENT — REASONABLE TIME.
   Where contract for sale of lots was definite in all its terms except as to time for payment with proceeds of resale of lots at certain prices, buyers were entitled to reasonable time within which to resell and pay seller with cash and vendor's lien notes received.

3. CONTRACTS ☞212(2)—TIME FOR PERFORMANCE—REASONABLE TIME.
   Where a contract fixes no time for performance, the law allows a reasonable time, depending on the circumstances of the case.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. APPEAL AND ERROR ⬥⟿1095 — REVIEW —
FINDINGS OF COURT OF CIVIL APPEALS.

Supreme Court is bound by finding of fact
of Court of Civil Appeals that a reasonable
time for performance of the contract in suit
had elapsed.

5. VENDOR AND PURCHASER ⬥⟿93—DEFAULT
IN PAYMENT OF PURCHASE MONEY—RESCIS-
SION AND RECOVERY.

When purchaser by executory contract of
sale has made default in payment of purchase
money, vendor, at his option, may rescind and
recover the property.

6. VENDOR AND PURCHASER ⬥⟿98—OPTION
CONTRACT—RECOVERY OF CONSIDERATON ON
FAILURE TO EXERCISE.

If contract merely gave option to acquire
lots covered by paying fixed prices, the total
consideration being $43,950, the $8,000 paid
by the optionees was the price of the option,
not recoverable by the optionees after they fail-
ed to exercise the option and the optionors re-
scinded.

7. VENDOR AND PURCHASER ⬥⟿98—DEFAULT
IN PAYMENT—RESCISSION WITHOUT REPAY-
MENT.

If contract was executory agreement to sell
lots on payment of fixed prices, and buyers de-
faulted in payment of purchase money when
due, sellers had the right to rescind without
repaying what had been paid, in absence of cir-
cumstances rendering step inequitable.

8. VENDOR AND PURCHASER ⬥⟿98—DEFAULT
IN PAYMENT—RESCISSION WITHOUT RETURN
OF PAYMENTS.

Where vendors rescinded for default of buy-
ers, who did not tender unpaid price, merely
offering to pay for lots by resale on terms au-
thorized by contract, a problematical event in
view of deterioration in value to $10,000 less
than unpaid purchase money, vendors could re-
cover possession of lots, which had not been
improved, without returning $8,000 paid by
buyers of total price of $43,950.

Error to Court of Civil Appeals of Seventh
Supreme Judicial District.

Suit by M. E. Merrill and others against
W. T. Bush and others. To review judgment
for plaintiffs, defendants brought error to the
Court of Civil Appeals, which affirmed (156
S. W. 606), and defendants bring error.
Judgments of the Court of Civil Appeals and
of the trial court affirmed on recommenda-
tion of the Commission of Appeals.

Stephens & Miller, of Ft. Worth, for plain-
tiffs in error.

Bean & Klett, of Lubbock, and Cooper,
Merrill & Lumpkin, of Houston, for defend-
ants in error.

Statement of the Case.

MONTGOMERY, P. J. This suit was insti-
tuted in the district court of Lubbock county,
Tex., by the defendants in error, M. E. Mer-
rill, J. C. Roberts, and F. G. Hudgins, against
the plaintiffs in error, W. T. Bush, R. Hark-
rider, the Western Realty Company, and J.
B. Daniels Realty Company, in the ordinary
form of trespass to try title to recover certain
lots lying in the town of Lubbock, in Lub-
bock county, Tex. The J. B. Daniels Realty
Company disclaimed all title to the proper-
ty, and the other defendants answered by
general demurrer, general denial, plea of not

guilty, and by a special answer setting up the
execution by the plaintiffs of a certain con-
tract, which will be hereinafter set out, and
claiming that said contract had not been
breached, and further asking that, in event
the plaintiffs should recover the land, the de-
fendants should recover the money paid un-
der the contract and for adjustment of equi-
ties. The above will be sufficient to indi-
cate the issues in the case, as no question was
raised as to the pleadings.

The contract out of which this litigation
arose, omitting the description of the prop-
erty, is as follows:

"This contract of bargain and sale made and
entered into this the 15th day of July, A. D.
1909, by and between J. C. Roberts, N. E. Mer-
rill and F. G. Hudgins, all of Lubbock county,
Texas, hereinafter referred to as parties of the
first part, and W. T. Bush, of Tarrant county,
Texas, and R. Harkrider, of Howard county,
Texas, hereinafter referred to as parties of the
second part, witnesseth:

"(1) That the parties of the first part have
this day sold and by these presents do hereby
sell and obligate themselves to convey or cause
to be conveyed in manner and time as herein-
after stated unto the said parties of the second
part or their vendees all and singular the fol-
lowing described real estate situated in the
county of Lubbock in the state of Texas, to
wit: (Here follows description of property.)

"(2) The consideration paid and to be paid
to said parties of the first part by said parties
of the second part for the property above de-
scribed and conveyed is the agreed sum of $43,-
945.00 as follows: $500.00 cash in hand paid,
receipt of which is hereby acknowledged, and a
further sum of $7,500.00 to be paid in cash on
or before the 1st day of August, A. D. 1909,
making total cash payment on said date $8,000,
and leaving balance unpaid of $35,945.00, which
said balance is to be paid in manner and time
as hereinafter stipulated.

"(3) It is mutually agreed and understood
by and between the parties to this contract that
the legal title to said above-described property
shall remain vested in the parties of the first
part until the entire purchase money as above
specified has been paid, and said first parties
agree and bind themselves, that whenever said
entire purchase money shall have been paid,
they will immediately thereafter execute and
deliver to the parties of the second part, their
heirs and assigns by a good and sufficient war-
ranty deed conveying all of the above-described
property, which has not at that time been pre-
viously conveyed under and by virtue of the
terms of this contract.

"(4) It is further agreed and stipulated that
parties of the second part shall be entitled to
the immediate possession of all of said property
conveyed by this contract upon payment of
the said sum of $8,000 as hereinbefore provid-
ed, and that after the payment of said $8,000.00,
said second parties shall be authorized and em-
powered to contract and sell the above-described
property, either as a whole or in single lots, or
in any number of lots at such price and on such
terms as they may desire, and that in all cases
where said second parties shall have sold said
lots or any number of them singly or in bulk,
parties of the first part will, on payment, ex-
ecute and deliver to the buyer of such lot or
lots a good and sufficient general warranty deed
conveying same to him for the consideration
agreed to be paid by them, provided however,
that in no case shall such deed be executed and
delivered where the amount of cash paid is
less than one-fourth of the total consideration,
and in all cases where deeds are demanded by

⬥⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

parties of the second part, they shall turn over and deliver to parties of the first part the total consideration for which such sale or sales have been made, including all of the cash payment, which must not be less than one-fourth of the total purchase price and the purchase money notes for balance, which said notes shall mature not later than eighteen months from and after date of deed, and shall bear interest from date at the rate of 6 per cent. per annum, shall retain an express vendor's lien on the lot or lots conveyed, and shall be the usual and regular form of vendor's lien notes. In this connection, it is agreed however that said second parties shall be allowed to retain from the cash payment a sum not to exceed $10.00 for each lot sold to cover expense of making such sale, and it is further understood and agreed that said second parties shall not sell any of said lots for a less sum than $100.00 per lot, and it is further understood and agreed that all expense incident to the execution of such deed or deeds shall be paid for by parties of the second part. It is the intent and purpose of the above agreement that whenever a sale of lot or lots shall have been made by parties of the second part on terms of not less than one-fourth cash and balance to be evidenced by note or notes maturing within eighteen months from date of such sale, and to bear interest at the rate of 8 per cent. per annum, then said first parties will make and execute a deed of conveyance to the purchaser of such lot or lots expressing therein the consideration for which such sale is made, acknowledging receipt of the cash payment which shall not be less than one-fourth of the purchase price, and take note or notes in their own names for the unpaid balance as above provided, which notes shall be secured by vendor's lien, and that such sum less the $10.00 retained by the parties of the second part as above provided shall be applied as a credit on the unpaid balance owing to said parties of the first part by said parties of the second part, as hereinbefore provided, and that whenever the proceeds of sales and deeds made in pursuance of this agreement shall aggregate the amount sufficient to pay all of said balance of $35,945.00 then said first parties will execute and deliver to parties of the second part a general warranty deed conveying to them all of remainder of said property embraced in this contract by proper and legal description, free and clear from any and all incumbrances.

"(5) It is a further agreement in the event said parties of the second part shall fail to make such additional cash payment of $7,500 within the time hereinbefore stipulated, then and in that event this contract shall become and remain null and void to all rights of said second parties, by reason thereof shall cease and terminate, and the said sum of $500.00 shall belong to said first parties.

"This contract executed in duplicate this 15th day of July, A. D. 1909," etc.

The evidence showed and the Court of Civil Appeals found that $500 was paid in cash at the time of the execution of said contract, and that the said $7,500 referred to therein was paid in accordance with the terms of the contract, about the 1st of August, 1909.

The contract set out above provided for the sale of 517 lots in what is known as Merrill's addition to the town of Lubbock.

After the execution of the contract and the making of the payments, as above set out, Bush and Harkrider took possession of the property for the purpose of sale, and on the 15th day of July, 1909, said Bush and Harkrider conveyed to a corporation, the Western Realty Company, all the rights which they had in and to the property described in said contract under the terms thereof. Neither Bush nor Harkrider nor the Western Realty Company ever sold any of the lots. The Court of Civil Appeals found that shortly after the execution of the contract the plaintiffs in error Bush and Harkrider (and their assigns), after certain preliminaries had been perfected, in procuring agents, literature, and installment contracts in blank, fixed the prices of said lots for sale at from $140 to $350 per lot on a straight selling proposition, but that none of the lots were sold. The Court of Civil Appeals further found "that the plaintiffs in error made a diligent effort to sell the property within the limitations of the contract for several months after its execution at the prices indicated above, but that the conditions and the depreciation in the value of the property made it impracticable to continue further efforts or pursue any method of selling the lots," and further found that plaintiffs in error had expended something like $2,100 for the purpose of selling said lots.

As we construe the above finding, after considering the same in connection with other statements of the opinion and the undisputed evidence as shown in the statement of facts, we have concluded that the Court of Civil Appeals intended to find that the plaintiffs in error made an effort to sell the property at prices ranging from $140 to $350.

We so construe this finding for the reason that the undisputed evidence in the statement of facts shows that, for several months after the execution of the contract, the plaintiffs in error attempted to sell the property at prices ranging from $140 to $350 per lot, and that there was no evidence showing that during said period of time the lots were offered for sale at prices ranging from $80 to $100 per lot.

The Court of Civil Appeals found that the lots at the time of the trial had greatly depreciated in value and were not then worth more than $50 per lot, and further found that the depreciation in value began soon after the execution of the contract. Such other facts as may be necessary will be stated in the opinion.

### Opinion.

The important question in this case is the proper construction of the contract.

The parties and the Court of Civil Appeals have treated it as a contract of bargain and sale, by which Merrill, Roberts, and Hudgins agreed to sell, and Bush and Harkrider to buy, the lots described therein at an agreed price and to pay therefor either from the proceeds of the lots when sold, or in cash; and the controversy was thus narrowed to the time and conditions upon which payment of the purchase money was to be made.

Merrill, Roberts, and Hudgins take the po-

sition that the contract evidences a sale of the property, and that there was an absolute obligation of Bush and Harkrider to pay the entire price, and that the only uncertainty arose out of the failure to fix a definite time for payment; in other words, the contention is that the right to contract and sell the lots and apply the proceeds on the purchase money was a mere privilege of paying all or part of the purchase money in that manner, and that, there being no time limit within which such sales should be made, the law would allow only a reasonable time, and that at the end of such reasonable time the price became due and payable in cash.

It was further claimed by them that, such reasonable time having elapsed and payment refused, they were authorized to rescind the executory contract and recover the property.

Bush and Harkrider and their vendee, the Western Realty Company, take the position that the balance of the purchase money, after the payment of the $8,000, was to become due when they had sold enough of the property at not less than $100 per lot to pay the unpaid purchase money, or a reasonable time had elapsed after they could have sold the property at that price. Giving the contract this construction, the contention is made that, as there never was a time at which the property could have been sold at the price fixed, the purchase money was not due, and therefore no right of rescission existed. The further contention is made that, if the vendors were entitled to rescission, the vendees were on principles of equity entitled to have the $8,000 repaid to them.

The Court of Civil Appeals upheld the views of Merrill, Roberts, and Hudgins, and further held that the evidences disclosed no equity requiring a return of the $8,000 paid.

The contract which is set out in the statement above is by the parties named a "contract of bargain and sale."

It recites that the sellers "do hereby sell and obligate themselves to convey, or cause to be conveyed, in manner and time as hereinafter set out," the lots in controversy.

The second paragraph provides that—

"The consideration to be paid to said parties of the first part by said parties of the second part is the agreed sum of $43,950.00, payable as follows: $500.00 cash in hand paid, * * * the further consideration of $7,500.00 to be paid on or before the first day of August, A. D. 1909, * * * and leaving the balance unpaid of $35,945.00, which said balance is to be paid in manner and time as hereinafter stipulated."

The third paragraph expressly retains the title to the property until all the purchase money had been paid, and the sellers bind themselves that, whenever the entire purchase money should be paid, they would execute proper conveyances.

The fourth clause provides that, after the payment of $8,000, Bush and Harkrider should have possession for the purpose of selling, and that they were "authorized and empowered" to contract and sell all or any number of said lots at such price and on such terms as they saw proper, provided that the lots should not be sold for less than $100 each and upon certain terms as therein provided.

The contract also provides that a part of the cash payment and all vendors' lien notes received for lots sold should be credited on the unpaid purchase price.

There is no provision in the contract for rescission or forfeiture, except that contained in the fifth paragraph to the effect that, upon failure to pay the $7,500 mentioned in the contract, the contract should become null and void, and that the sellers should retain the $500 paid.

The object of all rules of construction of contracts is to arrive at the intention of the parties. In this case, this intention must be reached by consideration of all the terms of the contract without the aid of any extraneous circumstances, as we do not find anything in the record, outside the contract itself, which can be of any assistance.

The obligations of Merrill, Roberts, and Hudgins are clearly expressed in the contract, and the conditions under which they were obligated to make conveyances are fully set out. On the other hand, the obligations of Bush and Harkrider, after the payment of $8,000, if any were imposed, are left largely, if not entirely, to inference. There is not in the entire contract any promise or agreement on their part to pay anything or do anything, unless the obligation to pay can be inferred from that provision of the second paragraph, reciting that the consideration paid and to be paid to the parties of the first part by the parties of the second part is $43,950, as follows: $500 cash, $7,500 to be paid in cash on or before August 1, 1909, and the balance in "manner and time as hereinafter stipulated."

There is not in any subsequent portion of the contract any requirement that this balance should be paid at all. The only provision is that contained in the fourth paragraph, authorizing Bush and Harkrider to sell the lots upon certain terms and to apply a portion of the cash payment and all vendors' lien notes received on the amount unpaid, and a further provision binding Merrill, Roberts, and Hudgins to make a conveyance whenever the price is fully paid.

We are inclined to the opinion that, after the payment of the $8,000, Bush and Harkrider had an option to purchase the lots upon the terms set out. The absence of any provision specifically requiring the payment of the balance and the fact that Bush and Harkrider were not required under the terms of the contract to sell or even make an effort to sell the lots, but only given the privilege of doing so, lead us to this conclusion.

However, we think it not necessary to go into this question, as, under our view of the law, the rights of the parties will be the

same under the facts of this case, whether the contract is one of sale or option.

[1] Treating the contract as one of sale, we think that the proposition of plaintiffs in error Bush and Harkrider and the Western Realty Company, "that the unpaid purchase money did not become due until either plaintiff in error had sold the property in controversy for as much as $100 per lot, or until the lapse of a reasonable time after they could have sold said property at said price," cannot be sustained.

The contract left it optional with the plaintiffs in error to sell the lots or not. They were not required to sell them at any price. "They were authorized and empowered" to sell them at such price as they saw proper, provided the price was not less than $100 per lot, and the cash payment at least one-fourth the full price, and the deferred payments on time not to exceed 18 months. The contract itself does not contain any provision that the balance due shall be paid when the lots are sold, nor is the sale of the lots made, by any term of the contract, a condition precedent to payment. If the contract had provided for payment when the lots were sold, or could be sold at the price fixed, then the sale or ability to sell at the fixed price would have been a condition precedent to payment; but, as we construe the contract, such is not its effect.

[2] We then have a contract for sale definite in all of its terms, except the time for payment. It was evidently contemplated that Bush and Harkrider should have a reasonable time within which to sell the lots and pay the vendor with the cash and vendors' lien notes received in payment for the lots.

[3] In every contract where no time for performance is fixed by the contract, the law allows a reasonable time for its performance; the length of time, of course, depending upon facts and circumstances of the particular case. Self v. King, 28 Tex. 552; Drumm Co. v. McFarland, 30 S. W. 93; Hart v. Bullion, 48 Tex. 278.

[4] The Court of Civil Appeals has found that a reasonable time for the performance of the contract had elapsed. We are bound by its findings, and therefore conclude that, whether the contract be treated as one of sale or option, Merrill, Roberts, and Hudgins had a right to renounce the same and recover possession of the property.

[5] The case of Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1062, involved a contract similar to the one under consideration, except that in the case of Lipscomb v. Fuqua the contract provided a definite time in which the land should be sold and provided that, if not sold within the time limited, the balance should be payable at a fixed date. If the contract involved in this case is construed as a contract of sale, and it is conceded that a reasonable time had elapsed for the payment of the purchase money before the attempted rescission, then the con-

tract in this case would be identical in legal effect as the contract in the case of Lipscomb v. Fuqua; that is, an executory contract for the sale of land. This being true, and the purchaser having defaulted in the payment of the purchase money, the rights of the parties must be governed by the rules applicable to such contracts. It is too well settled in this state to require authorities that, when the purchaser in an executory contract has made default in the payment of purchase money, the vendor may at his election rescind the contract. We therefore think that the vendor in this case at the time suit was brought had the right of rescission and was entitled to judgment for the possession of the property.

[6-8] The only other question in the case arises out of the claim of plaintiffs in error to a recovery of the purchase money paid. If the contract was a contract merely giving Bush and Harkrider the option of acquiring the property by payment of the prices, we think the $8,000 paid should be held to be the price of the option, and therefore that Bush and Harkrider, having received all that they contracted for, were not entitled to recover back the price paid. If, on the other hand, the contract evidences an executory agreement of sale, and default has been made in payment of the purchase money when due, that is, in a reasonable time, there being no time fixed in the contract, then the vendors had the right to rescind the contract without the repayment of the money paid under the contract, unless there were circumstances which rendered it inequitable for them to do so.

It will be noticed that the plaintiffs in error made no offer of performance by tendering the unpaid purchase money; the only offer made was in effect an offer to pay for the lots by a sale of them on the terms authorized by the contract, when, if ever, such sale could be made.

The lots at the time of the trial were worth much less than the amount due, and whether they would ever be worth more was a matter of speculation. The offer was no offer to perform at all. The contract gave the plaintiffs the privilege of selling the lots and of thus paying the purchase price. That privilege not having been exercised, or being impossible of exercise, did not have the effect of postponing indefinitely the performance of the contract.

In the opinion of Morre v. Giesecke, 76 Tex. 550, 13 S. W. 293, the law upon this subject is thus announced:

"The rule has been repeatedly and distinctly asserted, and is left by this decision in unimpaired force, that where the vendor has done nothing to waive that right he may, in every case of an executory sale of land where the vendee makes default in payment of the purchase money, maintain a suit for the recovery back of the land.

"We can see no good reason why, in every case in which the vendor sues to recover back the land contracted to be sold, the original ven-

dee. or any purchaser under him, may not only show, if the facts warrant it, that a recovery or rescission should not be allowed, and if that remedy is maintainable also the existence of any facts entitling him in equity to have compensation for permanent and valuable improvements and to be compensated for partial payments previously made.

"We repeat what has already been said when we say that, when the vendor's suit is predicated upon the mere refusal of the vendee to pay the whole consideration contracted for, the facts that the vendee has paid part of the consideration and made valuable improvements, coupled with possession of the property, unaided by some other sufficient equity, will not entitle him to recover for such purchase money or improvements. In such cases, when the vendor has neither waived his legal rights nor committed any default, he cannot be involuntarily taxed with improvements made upon his property without his consent, or be made to pay a price for recovering it back.

"The remedy by rescission is not favored, and, as has been said, slight circumstances, when they may be properly treated as indicative of a purpose upon the part of the vendor not to insist on that remedy, may be treated as a waiver of the right to rescind, unless its maintenance becomes necessary to enable the vendor to enforce the payment of the consideration for which he contracted to sell the land; and when a suit for the recovery back of the land has been brought, where any portion of the purchase money has been paid, or where valuable and permanent improvements have been placed upon the land by the vendee or by purchasers under him, and the defendant when sued brings into court and offers to pay the balance of the purchase money with costs of suit, unless there exist strong countervailing equities, the money ought to be received and a recovery of the land denied. On the other hand, when the vendee does not seek to perform the contract, and the vendor shows himself entitled to recover back the land, then, before he should be compelled as a condition of its reacquisition to pay for improvements or refund purchase money, equitable right to such relief should be shown by the vendee. It should appear that it will not be unjust to the vendor to so charge him."

This case has been frequently cited with approval and, as we understand, expresses the law as it exists to-day.

The facts of this case, in our judgment, fail to show any such equity as entitles plaintiffs in error to recover the partial payment of purchase money made by them or any part thereof. There were no improvements placed on the land, and the land was not in any manner enhanced in value while the contract was in force. Nothing done by plaintiffs in error in any way inured to the advantage of the vendors. The land, during the existence of the contract, had so depreciated in value that the market value at the time of the trial was $10,000 less than the unpaid purchase money. The vendors at the time the contract was made had property worth approximately $43,000. They received in cash $8,000, and the property at the time of rescission was worth only about $25,000. It appears to us that it would be unjust to the vendors to require them, as a condition to recovering possession of their property, to repay the $8,000 received by them or any part of it. Upon the whole case, we are of

opinion that the judgments in the district court and the Court of Civil Appeals are correct, and that the same should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.