## WOODS v. PEERY.
### No. 4471.

Court of Civil Appeals of Texas. Amarillo.
Sept. 23, 1935.

Rehearing Denied Oct. 21, 1935.

Tatum & Strong, of Dalhart, for appellant.

B. N. Richards, of Dalhart, for appellee.

JACKSON, Justice.

C. N. Peery was the legal owner of 1,360 acres of land in Ochiltree county, against which the Renfrew Investment Company held vendor's lien note for $7,000, which, with the unpaid interest, amounted to approximately $9,000, and was secured by a first lien on the land. He had become indebted to the Midway Bank & Trust Company in the amount of $9,000, which indebtedness was secured by a second lien on the land.

He was in default, and the holders of these obligations instituted suit to foreclose their respective liens against the property.

C. N. Peery had an equity in the land, and it was agreed that foreclosure should be delayed to afford him an opportunity to procure a purchaser or purchasers therefor who would pay a sufficient consideration to satisfy these debts and liens and pay him for his equity.

Pursuant to this agreement, on January 1, 1931, Peery entered into a written contract by the terms of which he agreed to sell and convey to E. E. Jones, who agreed to buy, a certain 500 acres of land for a consideration of $10,000, to be paid $58 in cash and by the execution of one vendor's lien note for $4500, payable on demand, and six additional vendor's lien notes, each for $907, one of which was due on January 1st each year thereafter until said notes were paid. The contract provided that the purchaser should make application for a farm loan, the proceeds of which should be used to take up the notes he had agreed to give; that Peery should carry the balance as a second lien and secure a release of the indebtedness to the Renfrew Investment Company and the Midway Bank & Trust Company.

On February 17th Peery entered into a contract with E. B. and H. B. Cagle, by the terms of which he agreed to sell and convey, and the Cagles agreed to buy, a certain 320 acres of said 1,360-acre tract

for a consideration of $6,400, to be paid by the execution of one vendor's lien note for $3,000, payable on demand, and four additional vendor's lien notes, two for $800 each and the last for $1,000, one of which was due on each December 31st thereafter until the notes were paid. This contract also provided that the purchaser should make application for a farm loan, the proceeds of which was to be used in the payment of the demand note for $3,000; that Peery should carry the balance as a second lien, and secure a release of the indebtedness to said investment company and to said bank.

By an oral agreement, Peery agreed to sell James N. Fleck the remaining 540 acres of the 1,360-acre tract for a consideration of $16,200, and thereafter agreed orally to sell and convey the entire 1,360 acres to Chas. C. Woods, who was president of the Midway Bank & Trust Company, and who agreed to assume the obligations of Peery in the Jones and Cagles contracts, and to execute a contract to sell to James N. Fleck said remaining 540 acres according to the oral contract between Peery and Fleck.

In compliance with this understanding, Chas. C. Woods, on March 10, 1931, entered into a written contract, by the terms of which he agreed to sell and convey, and James N. Fleck agreed to buy, the remaining 540 acres for a consideration of $16,200 to be paid by the assumption by Fleck of a lien of about $5,100 to be secured on said 540 acres, and the execution of three vendor's lien notes, each for the sum of $3,700 and due one, two, and three years after date, respectively.

Contemporaneously with the last-mentioned contract, Peery entered into a written contract to sell and convey the entire 1,360 acres of land to Chas. C. Woods, who agreed "to pay in consideration therefor the release of the Renfrew Investment Company and Midway Bank & Trust Company liens and $6,600.00 to be paid as follows: $1,000.00 in cash upon the securing by the said Woods of a land loan, and $5,600.00 by three time certificates of deposit of $1,866.66 each of the Midway Bank & Trust Company, due one, two and three years from approval of abstract and delivery of deed, and drawing four per cent interest per annum from date.

"It is agreed that the purchaser shall apply for a loan as soon as deed is received and upon closing and receipt of cash from loan said Woods agrees to pay Peery the above $1,000.00, without interest," from which $1,000 was to be deducted the unpaid taxes on 220 acres of said land.

The record discloses that all of the above contracts were written by Chas. C. Woods.

Peery, on March 11, 1931, deeded the entire tract to Chas. C. Woods, who delivered the three time certificates of deposit on the bank and promptly secured releases of the liens held by the Renfrew Investment Company and the Midway Bank & Trust Company.

About February 1, 1933, Chas. C. Woods deeded to each of the purchasers—Jones, the Cagles, and Fleck—the tract each purchaser was to receive, for the consideration and upon the terms and conditions stipulated in said sales contracts.

The appellee, C. N. Peery, on August 24, 1934, instituted this suit in the district court of Dallam county against Chas. C. Woods to recover the sum of $1,000, less certain taxes, which he alleged was due him under the contract entered into by him and appellant for the sale of the land on March 10, 1931.

Appellee pleads his compliance with the contract, the refusal of appellant to secure a loan, his failure and refusal to pay the obligation; that a year is a reasonable time in which to obtain a loan; that a reasonable time has elapsed therefor, by reason of which he is entitled to a judgment for said $1,000, less certain taxes as stipulated in said contract.

The appellant answered by general denial and alleged that at the time the contract was made it was contemplated that he would apply for a loan for $12,600, and it was agreed and understood at that time that, unless he could secure a loan on the land for said sum within a reasonable time, he was not to become obligated to appellee for the $1,000 mentioned in the contract, and that the securing of such loan was a condition precedent to his liability; that he had exercised due diligence to secure a loan on the land for said sum, and failed because of no fault of his, and appellee was therefore not entitled to recover.

In response to special issues, the jury answered in effect that the payment of the $1,000 stipulated in the contract was not conditioned on appellant's ability to procure a loan of $12,600 on the land; that he

failed to exercise due diligence to procure said loan within a reasonable time; that he was not unable to procure a loan within a reasonable time, which would have been one year.

The court, after deducting $200 for the taxes on the 220 acres of land mentioned in the contract, rendered judgment in favor of appellee for the sum of $800, with legal interest from the date of the judgment.

The finding of the jury that one year was a reasonable time in which appellant could have procured a loan is not questioned.

Appellant contends that the finding of the jury that procuring a loan for $12,-600 was not a condition precedent to the payment of the $1,000 is unwarranted by the testimony, since the Jones contract shows a loan was to be obtained for $4,500, the Cagles contract discloses that a loan of $3,000 was to be had, and the Fleck contract reveals that a loan of $5,100 was to be obtained, and the testimony is that the aggregate of these sums, $12,600, was the amount of the loan to be procured. It will be noted that the Jones contract provided for seven notes, one for $4,500 and six for $907 each, and that application be made for a farm loan, "the proceeds of which shall be used to take up notes above given." The amount of the loan to be applied for in this contract is not stipulated. The Fleck contract provides that he was to assume "a loan to be secured of about $5,100.00." This language did not definitely fix the amount of the loan to be assumed, but was an estimate of the loan that might be had.

Mr. Allen, who was present at the time the sales contracts between Woods and Fleck and Peery and Woods were made, testified that he had talked to several loan agents and advised Mr. Woods to apply for a loan of nine or ten thousand dollars.

Mr. Peery testified that there was no discussion, agreement, or understanding as to any fixed amount of the loan Mr. Woods should procure; that he was to get a loan out of which appellee was to be paid $1,000, less the taxes on the 220 acres.

Under the record, Mr. Woods was paying a consideration of $25,615 for the property and receiving a consideration of $32,000, a sum exceeding by more than $6,000 the amount he paid.

The part of the contract under consideration stipulates that as a part of the price for the land there shall be paid "$1,000.00 in cash upon the securing by the said Woods of a land loan"; that he "shall apply for a loan as soon as deed is received and upon closing and receipt of cash from loan said Woods agrees to pay Peery the above $1,000.00, without interest." The contract does not provide that this $1,000 shall not be paid unless the loan is procured. The only uncertainty relative to the payment of the $1,000 is the time.

"In every contract where no time for performance is fixed by the contract, the law allows a reasonable time for its performance." Bush v. Merrill (Tex. Com. App.) 206 S. W. 834, 835, 838.

"If a contract for payment of money contains a provision for raising a fund, such provision is not a condition to the payment unless the contract clearly shows that the parties did not intend the payment to be made unless the fund were raised." Page on Contracts, Supplement, vol. 2, p. 1827, par. 2596.

"Where, from the contract, it appears that a stipulation for payment on receipt of a specified fund, or a provision indicating the source from which a fund for payment or performance is to be procured is inserted merely for the purpose of fixing the time at which performance shall become due, such stipulation will not be regarded as evidencing conditions precedent, but performance may be demanded within a reasonable time after the fund should have been realized." 13 C. J. p. 632, par. 701.

In Pegg et al. v. Olson, 31 Wyo. 96, 223 P. 223, the Supreme Court of Wyoming, in construing a contract for the sale of land which stipulated that the consideration was $6,400, to be paid as follows: "Five hundred dollars cash receipt of which is hereby acknowledged, the balance to be paid as soon as C. S. Olson, second party above, can get a loan through from the government," holds that such provision refers to the time when payment should be made, and is not a condition precedent to the payment of the balance of the purchase price. This opinion and the authorities cited seem to be decisive against appellant's contention that the procuring of a loan was a condition precedent to the payment of the $1,000.

The construction by the court in Bush v. Merrill, supra, of a contract for the sale of a tract of land which was to be platted into lots, and a part of the consideration therefor to be paid out of the proceeds received from the sale of such lots, is in harmony with the above holding; also William F. Mosser Co. v. Cherry River Boom & Lumber Co., 290 Pa. 67, 138 A. 85.

The undisputed testimony is that appellant made no effort to procure a loan for any sum other than $12,600. Inasmuch as the procuring of a loan for that amount, under this record, was not a condition precedent to the payment of the $1,000, and a reasonable time had expired to obtain a loan out of which to make such payment, the obligation to pay became fixed and appellee was entitled to recover, and the findings on the other issues are immaterial.

The judgment is affirmed.