## A. M. SWOPE V. MISSOURI TRUST COMPANY ET AL.

Decided April 17, 1901.

**1.—Vendor and Purchaser—Equitable Relief for False Representations—Similar Relief to Defendant Also.**

Where a purchaser of land sued to cancel a note given for part of the purchase money because of misrepresentations as to the quantity of the land and a shortage in the amount, defendant had the right to plead misrepresentations by plaintiff as to the quantity and quality of the land which defendant had received in exchange as part consideration of the sale to plaintiff, setting off its damages by reason thereof against plaintiff's claim, and to recover judgment for a difference in its favor.

**2.—Same—Equitable Relief—Prayer.**

Since the prayer does not control a court of equity in determining what relief should be given, it was proper for the court, where the pleadings and evidence in an equitable suit showed that a note given in part payment for land was secured by a deed of trust, in rendering judgment for the balance due on the note, to also decree a foreclosure of the lien, although there was no prayer for such latter relief.

**3.—Same—Unpaid Taxes—Offset.**

Where the purchaser under a warranty deed is compelled to pay taxes that had accrued and become a lien on the land prior to the purchase, the court should have credited him with the amount thereof in rendering judgment on a note given for part of the purchase price.

Appeal from Johnson. Tried below before Hon. J. M. Hall.

*Poindexter & Paddelford,* for appellant.

*Ramsey & Odell* and *H. P. Brown,* for appellees.

NEILL, ASSOCIATE JUSTICE.—On the 12th day of September, 1898, the appellant, A. M. Swope, brought suit in the District Court against the Missouri Trust Company, a corporation organized under the laws of Missouri; O. A. Crandall; the First National Bank of Cleburne, Texas; its president, C. Dixon, and its cashier, C. W. Mertz, to enjoin the trust company from negotiating a certain negotiable promissory note for $5500, described in our conclusions of fact. Also to restrain said trust company, O. A. Crandall, said national bank, its president and cashier, from transferring or allowing to be removed out of the jurisdiction of the court certain other promissory notes made to appellant, and by him assigned to the Missouri Trust Company as collateral security for the payment of the note first mentioned, alleged to be, when the suit was filed, in the possession of said First National Bank; and for a cancellation of the principal note upon the ground that it had been paid, and to required the defendants to bring into court the collateral notes, and that they be delivered to the appellant.

As grounds for the cancellation of the note, appellant alleged that on the 20th of December, 1893, he purchased from the Missouri Trust Company a certain tract of land situated in Johnson County, Texas, for

the consideration of $13,500, and of the consideration he paid the company the sum of $8000 in cash, and for the balance, $5500, he executed to said company his negotiable promissory note for that sum, which note is set out haec verba in his petition, as it appears in our conclusions of fact; that at the time the land was conveyed to appellant and the note executed in part consideration therefor, the appellee, the Missouri Trust Company, by its authorized agent, represented to appellant that the tract of land contained 981 acres, and that he was induced by such representations to purchase same, and executed the promissory note in part payment therefor; that such representations were untrue, the fact being that the tract of land conveyed only contained 881 acres, the quantity being 100 acres less than appellant bargained for and thought that he was buying at the time the deed was made and when the note was executed. That the purchase of the land was understood between the parties to be not in bulk, but at $13.76 per acre; that by reason of such deficiency the land was of value $1376 less than it would have been had it contained the number of acres represented, and to that extent the consideration for which the note was given is a failure; that when he purchased the land there was due and unpaid thereon State and county taxes, interest and costs thereon, which were a lien upon the premises, the sum of $243.92, which appellant was compelled to and did pay in order to discharge such incumbrance from the premises. That after deducting the amount of said payment made for taxes, the amount of decreased value of the land on account of its deficiency in quantity, and crediting the note with the payments made thereon, it would be overpaid to the extent of $328.46. For which sum, after the prayer for the cancellation of the note, and a deed of trust alleged to have been made to secure the same, he prayed judgment.

The Missouri Trust Company in its answer denied that the land was sold by the acre to the appellant, but averred that it was sold in bulk. It also denied making any representations as to the quantity conveyed, and averred that appellant was as well acquainted with the quantity and character of the land, and had equal means of acquiring knowledge thereof with the trust company. That the $8000 expressed in the deed as the cash consideration was in fact represented by 280 acres of land, composed of two tracts, one of 180 acres and the other of 100 acres, in Morgan County, Missouri, estimated at that value, conveyed by appellant to the trust company as a part of the consideration for the conveyance of the land for which the note sought to be canceled was executed. That the appellant represented to the trust company's agent, Crandall, who represented the company in negotiating the trade, that the 180-acre tract was in a good state of cultivation, and that there was not exceeding ten acres of waste land upon the whole tract, and that the company believed and relied upon such representation as true. But the fact is there was only 77 acres out of the 180-acre tract in cultivation, the balance of said tract being timber and of little value, not worth exceeding

$10 per acre, and part of the same being absolutely worthless, and that said tract was worth at least $2500 less in the condition in which it really was than what it would have been worth had it been in cultivation and in the condition and of the quality represented by appellant. In its answer the trust company tendered appellant a deed to the land in Missouri and the money that it had been paid by appellant on the note, and prayed for a rescission of the sales. It also prayed for the difference between the value of said land both as to area and quality and price be set off against any claim of appellant, and for all such other and further relief, legal and equitable, general and special, as the cause merits.

The cause was tried before a jury, who, after hearing the evidence and receiving the charge of the court, returned the following verdict: "We the jury have allowed to plaintiff on account of a deficit in the land bought by him the sum of $1376. We have allowed the defendant the sum of $1132 on account of shortage in the number of acres of the Missouri land that was in cultivation; the difference between these two sums, amounting to $244, we have credited on the $5500 note as of the date, and after allowing all payments on said note, we find that there is still due and owing by the plaintiff to the defendant the sum of $1534.83." On this verdict the court rendered a judgment in favor of the defendant, the Missouri Trust Company, and against the plaintiff for the sum of $1534.83, with interest from the date of the judgment at 10 per cent per annum, together with all costs of suit, and foreclosing a lien on the 881 acres of land, and ordering that the land be sold and the proceeds applied to the payment of said judgment, and rendered a judgment in favor of all the defendants against the plaintiff, that they go hence without day and for their cost, etc.

The facts in this case are as follows: On the 20th day of December, 1893, the Missouri Trust Company conveyed to the appellant by its deed of that date a certain parcel of land out of the George Gentry 1280 acres survey, situated in Johnson County, Texas. The consideration expressed in the deed was $8000 cash, and a promissory note of that date made by the grantee to the Missouri Trust Company for $5500, which note is in words and figures as follows:

"United States of America. Sedalia, Missouri, Missouri Trust Company. No. 169. $5500. Real Estate Loan. On the first day of January, 1899, for value received, I promise to pay to the order of the Missouri Trust Company, at its banking house in Sedalia Missouri, $5500, with interest at the rate of 7 per cent per annum, from date until maturity and 10 per cent from maturity until paid, payable semi-annually on the first day of January and July of each year, on the presentation and delivery at said banking house of the proper interest coupon hereto attached. This note is secured by deed of trust on real estate in Johnson County, Texas, of even date herewith, executed by A. M. Swope and wife to J. M. Brugler, trustee, duly recorded in the recorder's office of said county, which said real estate is subject to no prior lien or incumbrances

whatsoever. Dated Sedalia, Missouri, December 20, 1893. (Signed) A. M. Swope."

At the time and prior to the date of the conveyance, the Missouri Trust Company, through its authorized agent, O. A. Crandall, represented to appellant that the tract contained 981 acres, that appellant was ignorant of the quantity of the land, and relied upon the representation of Crandall as to the number of acres, and was induced by such representations to make the purchase. As a matter of fact the number of acres contained in the tract conveyed was only 881 acres. The land conveyed was worth $1376 less than it would have been had it contained the number of acres represented by the company to appellant.

The cash consideration of $8000 expressed in the deed was not paid in cash, but consisted of a farm of 280 acres, containing two tracts, one of 180 acres and the other of 100 acres, situated in Morgan County, Missouri, which was estimated by the parties in the transaction and represented by the appellant to Crandall, as agent of the trust company, to be worth $8000, the amount expressed as the cash consideration in the deed. That at and before the time the exchange of lands was effected, the deeds and note executed, the appellant represented to the trust company's agent, who represented it in the transaction, that the 180 acres tract of the farm was in a good state of cultivation, and that there was not exceeding ten acres of waste land upon the whole survey. While it is not directly testified to, the facts and circumstances disclosed by the evidence are reasonably sufficient to warrant the conclusion that the trust company's agent, acting for the company, relied upon such representation, and was induced by said representation to take said farm of 280 acres in exchange, as part payment for the land it conveyed appellant, at a valuation of $8000, said agent at the time being ignorant of the quantity of the land in cultivation and of its quality. As a matter of fact there was only 77 acres of the land in the 180 acres tract in cultivation. That the land in Missouri, conveyed by the appellant to the company was worth $1132 less than it would have been had it contained the number of acres in cultivation represented by appellant to the company, or its agent. The evidence clearly shows that the appellant paid to the tax collector of Johnson County for the purpose of redeeming the land conveyed him by the trust company from taxes due thereon, for the year, 1891, the sum of $243.92. The exact date of the payment to the collector is not shown, but the certificate of redemption given by the Comptroller bears date March 15, 1899. Evidence was offered by appellant, which in our opinion was admissible, to show that the taxes were regularly assessed, and that the amount, including costs and interest, was the sum paid by appellant to redeem the land therefrom. Before it was paid by appellant, he notified the appellee, who was liable therefor under his warranty deed, to pay said taxes, but the trust company gave the matter no attention.

As arising from the maxim, "He who seeks equity must do equity," it may be regarded as an universal rule governing a court of equity in

the administration of its remedies, that whatever may be the nature
of the relief sought by the plaintiff, the equitable rights of the defend-
ant, growing out of or intimately connected with the subject of the
controversy in question will be protected, and for this purpose the
plaintiff will be required, as a condition to his obtaining the relief he
asks, to acknowledge, admit, provide for, secure, or allow whatever
equitable rights (if any) the defendant may have, and to that end the
court will, by its affirmative decree, award the defendant whatever re-
lief may be necessary to protect and enforce those rights. 1 Pom. Eq.,
2 ed., sec. 388; State v. Schneider, 66 Texas, 698; Chaney v. Coleman,
77 Texas, 1031.

Under this rule the appellant can not complain of the court's sub-
mitting to the jury the questions as to whether or not he represented to
the trust company, at or prior to the time it agreed to take the Mis-
souri farm at $8000 as a part consideration for the premises conveyed
him, that a larger portion of the Missouri land was in a state of culti-
vation than really was, and whether the company relied upon such rep-
resentation, and would not have taken the land at that price had it
known that such representations were not true. The pleadings and
evidence clearly raised these issues, and the trust company had as much
right to claim an abatement of the amount in value for which said lands
were taken by reason of the misrepresentations of the appellant, as' he
had to claim a deduction from the purchase money note by reason of
the deficiency in the quantity of land as represented by the company,
for which the note was given. Indeed, under the rule quoted, it was
his duty to clearly and explicitly state in his pleadings the facts sub-
mitted in these issues. If, then, he had truly stated the facts in regard
to his representation as to the quantity of the land in cultivation, and
the company's reliance upon them, and being induced thereby to take
the land at $8000 as part payment for the land for which he executed
the note, it would have appeared from his own showing just what, if
anything, he was entitled to have abated by the purchase money note
given by him. The court in submitting these issues to the jury sought
to ascertain the facts of the transaction, and have the appellant do only
what he should in his pleadings have proffered to do—equity.

The evidence no more warranted the court in submitting the ques-
tion as to whether the statements made by the appellant to the trust
company's agent as to the quantity of land in cultivation were repre-
sentations or merely matters of opinion, than it authorized the court
to submit such question in regard to the statements made by the com-
pany's agent to appellant as to the quantity of the land conveyed. The
evidence as to the statements made by the respective parties is substan-
tially of the same character, and clearly shows that the statements were
representations made by the respective parties, as contradistinguished
from expressions of opinion. As the note upon its face provided that
it should bear interest at the rate of 10 per cent per annum from matu-
rity, it was error for the court to tell the jury that it bore interest from

maturity at the rate of 12 per cent per annum. But, as the court informed the jury, until maturity it bore interest only at the rate of 7 per cent per annum, and as all the payments made by appellant were made before maturity, the jury were only required to calculate the interest on the indebtedness according to the contract up to the time of the various payments, and as the judgment is only made to bear interest at the rate of 10 per cent per annum, the appellant was not prejudiced by the error of the court in stating incorrectly the rate of interest upon the note after its maturity.

It is a fundamental conception of equity jurisprudence, that the court of chancery, in any cause coming before it for decision, if the circumstances of the case will permit, and all the parties in interest are before it, will strive to determine the entire controversy, to award full and complete relief, and do complete justice to all the litigants, whatever may be the amount or nature of their interest, in the single proceeding, and thus bring all possible litigation over the subject matter within the compass of one judicial determination. 1 Pom. Eq., 2 ed., sec. 242. In no case will a court of equity wrest from any party any legal advantage he may have gained without requiring his adversary to do complete justice, either by paying the amount due, or by submitting to any order of the court which may be necessary to adjust the rights of the parties with each other according to fair dealing and good conscience. Gregory v. Ford, 14 Cal., 138, 73 Am. Dec., 639. This being purely an equity case, and it appearing from the admissions in the pleading and the uncontroverted testimony that the note made by appellant to the Missouri Trust Company expressly retained a vendor's lien upon the premises for which it was given as a part of the purchase money, and was also secured by a lien on the premises taken in the form of a deed of trust, the court, after ascertaining the amount due upon the note, did not error in rendering judgment therefor and in decreeing a foreclosure of said lien to secure the balance due, notwithstanding the trust company did not specifically pray for such relief. A prayer does not control a court of equity in determining what relief shall be given. It grants such relief as is consistent with the issues raised by the pleadings, and supported by the evidence. Coutlett v. Mortgage Company, 60 S. W. Rep., 817; Bell v. Mewfield, 4 Am. St. Rep., 436.

The appellant wholly failed to show that he was entitled to any relief against the parties defendant other than the Missouri Trust Company, and therefore, as regards them, there was no issue to submit to the jury, and the court did not err in entering judgment that as to them the appellant take nothing by his suit.

We think the court errred in not deducting from the note the amount of $243.92 which appellant was compelled to pay to redeem the land from taxes, as before stated. This error, however, may be cured by a remittitur, and if the Missouri Trust Company will, within ten days, enter in this court a remittitur of said sum, together with interest thereon from the 15th day of March, 1899, to date of judgment, at the

rate of 10 per cent per annum (the rate of interest the judgment bears),. the judgment of the District Court will be affirmed; otherwise it will be reversed and the cause remanded on account of such error.

*Affirmed upon remittitur.*