HONAKER et al. v. GUFFEY PETROLEUM CO. (No. 2797.)

Court of Civil Appeals of Texas. Amarillo. March 23, 1927.

Rehearing Denied May 4, 1927.

1. Pleading ⬤⇒214(1)—Allegations of petition are assumed true on demurrer.

In passing on demurrer, law requires that allegations of petition be taken as true.

2. Mines and minerals ⬤⇒48—Sale contracts of oil and gas are governed by "realty" rules.

Oil and gas in place are "realty," and contracts for sale thereof are governed by same rules as those for sale of realty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

3. Mines and minerals ⬤⇒78(1)—Purchaser of oil rights, under contract providing for development and for royalties if oil was found, must continue development within reasonable time after having drilled dry hole.

Where contract for sale of oil rights provided for development and royalties if oil was found, without providing time for performance, except that one well should be drilled within 30 days, purchaser having drilled one dry hole held required to continue development within reasonable time.

4. Mines and minerals ⬤⇒78(1)—Purchaser of oil in place, breaching agreement to pay royalties in oil by failing to drill, held liable for money vendors would have received in oil.

Purchaser of oil in place under agreement to drill wells and pay royalties, who refused to pay in oil after reasonable time had elapsed, having failed to drill, held liable for money vendors would have received in oil.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Pleading** &#9758;192(6)—**Court cannot assume on demurrer that reasonable time for development of oil rights under sale contract had not elapsed.**

In suit by vendor of oil rights for purchaser's failure to drill oil wells, court is unauthorized to assume on demurrer that reasonable time for drilling had not elapsed, where sale of oil rights required development by drilling within reasonable time, since this was issue of fact.

**6. Pleading** &#9758;192(6)—**Court could not assume, on demurrer, that vendors of oil rights might not show damages for purchaser's breach of contract by failure to drill.**

In suit by vendors of oil rights for purchaser's breach in failing to drill wells within reasonable time, as provided by contract requiring development and payment of royalties if oil was found, court *held* not entitled to assume on demurrer that plaintiffs could not show either nominal or actual damages for the breach.

**7. Mines and minerals** &#9758;78(7)—**In suit against purchaser of oil rights who failed to drill, court, under plaintiff's general prayer for relief and damages, should have heard testimony and granted appropriate relief under facts.**

In suit by vendors of oil rights against purchaser who breached contract, which provided for royalties, by failing to drill within reasonable time, court, under plaintiff's general prayer for relief and for such damages as they had suffered, should have heard testimony and granted any relief they were entitled to under facts, whether instrument could be canceled or not.

**8. Judgment** &#9758;252(5)—**Chancellor grants relief consistent with issues raised by pleadings and supported by evidence; not being controlled by prayed for general relief.**

In equity cases, prayer for general relief does not control chancellor, but he grants such relief as is consistent with issues raised by pleadings and supported by evidence.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Mrs. Jane Belle Honaker and others against the Guffey Petroleum Company and others. From a judgment for defendant Gulf Production Company, plaintiffs appeal. Reversed and remanded.

Allen Charlton and Beall, Worsham, Rollins, Burford & Ryburn, all of Dallas, for appellants.

Carrigan, Britain, Morgan & King, of Wichita Falls, and David Proctor, of Fort Worth, for appellee.

JACKSON, J. The plaintiffs Mrs. Jane Belle Honaker, surviving widow of W. B. Honaker, deceased, Mrs. Vivian Stewart, a widow, Mrs. Willie Holsonbake and her husband, J. R. Holsonbake, Mrs. Beulah A. Herron and her husband, W. P. Herron, and Mrs. Myrtle McNew and her husband, J. F. McNew, the sole heirs of W. B. Honaker, instituted this suit in the district court of Wichita county, Tex., against the Gulf Production Company, N. J. Murphy, E. L. Gallinger, and the Great Southern Oil & Gas Company, defendants.

Plaintiffs allege that W. B. Honaker died intestate in November, 1911, and no administration has been had on his estate, and none was necessary.

The first count in plaintiffs' petition is an action in trespass to try title for the recovery of 100 acres of land, the metes and bounds of which are given, out of the Richard Meade survey in Wichita county, Tex.

In the alternative plaintiffs plead that about September 16, 1910, W. B. Honaker, joined by his wife, Jane Belle Honaker, one of these plaintiffs, executed and delivered to the Texas Company an oil and gas lease on six tracts of land, aggregating 1,736¼ acres; that the second tract contained 500 acres out of the Richard Meade survey, of which the 100 acres involved in this suit constituted a part. They attach to and make a part of their petition a copy of the lease made by W. B. Honaker and Jane Belle Honaker, as grantors, to the Texas Company, as grantee, which provides that the grantors "grant, bargain, sell, and convey unto the said grantee all of the oil, gas, coal, and other minerals in and under the lands herein described, together with the exclusive right of ingress and egress at all times for the purpose of drilling, mining, and operating for oil, gas, coal, and other minerals." It stipulates for conducting all operations, the erection of appliances and structures, the laying of pipe lines necessary for the production, mining, storing, and transportation of oil, gas, and other minerals. Following the description of the six tracts of land, the terms of the lease affecting the questions involved in this appeal are:

"To have and to hold, all and singular, the above-described premises, rights, properties, and privileges, and all such as are hereinafter specified, etc.

"(1) The considerations of this contract are as follows: (a) The sum of eight hundred and sixty-eight and 12/100 dollars, payment whereof by the grantor is hereby acknowledged; (b) such other payments by the grantee, if any, as may be hereinafter provided for; (c) the royalties hereinafter specified; and (d) the expenditures by the grantee of such sums of money as may have been or may hereafter be made upon the above premises or upon neighboring lands planned for the development of mineral resources in such locality, and the payment and expenditures made or that may be made by grantee are considerations, not only for the mineral rights in the lands aforesaid, but for all the other privileges granted herein.

"(2) The royalties above mentioned as to oil shall be a quantity equal to one-eighth of all produced and saved upon the premises, the same to be delivered at the well free of charge to the grantor, or to his credit in the pipe lines to which such wells may be connected."

"(10) This lease is not intended as a mere

(294 S.W.)

franchise, but is intended as a conveyance of the property and privileges above described for the purposes herein mentioned, and is so understood by all parties hereto."

The lease stipulates:

That the rights granted shall be forfeited unless operations for the drilling of a well for oil and gas shall begin within one year from the delivery of the contract, providing the time for drilling may be extended for a period of not exceeding two years by the payment to the grantors by the grantee of $439 each three months. That operations upon a well shall be prosecuted with diligence and continued until the well has reached a depth of 2,000 feet, unless oil or gas in paying quantities be sooner developed, and that the beginning of a well shall relieve the grantee from further payments for delay. That for every well drilled there shall be released from forfeiture an area of 200 feet square with the well in the center, together with 80 acres adjoining the well, to be designated by the grantee if the grantors so demand. That, if the grantee, its successors or assigns, should discover oil, gas, or other minerals within the time allowed, the conveyance shall continue in full force and effect for a period of 20 years, and so long thereafter as minerals are produced in paying quantities. That this lease contract conveyed a determinable fee, and the Texas Company and its assigns were bound to develop and use the lands for the purposes stated in the lease, and to perform their obligations with reasonable expedition and diligence. That about the 22d day of August, 1911, the Texas Company transferred to W. P. Herron and B. F. Robbins the second tract of land in the original lease, which contained 500 acres, and of which the 100 acres in controversy is a part, and in said transfer it is provided:

"If operations are begun by grantees on said 500-acre tract, they agree to prosecute such work thereon with due diligence, and agree further to carry on development to such extent as will unquestionably fully and fairly meet and fulfill the requirements therefor as set forth and contemplated by the provisions of aforesaid lease from W. B. Honaker and wife, Jane Belle Honaker, to grantee in so far as such have application and reference to the said 500-acre tract, the subject-matter hereof."

That about the 28th day of August, 1911, W. P. Herron and B. F. Robbins assigned to J. A. Trice, W. B. Honaker, and W. L. Ramsey each an undivided one-sixth interest in said leasehold estate, and G. M. Herron and L. L. Wilkins each an undivided one-twelfth interest therein, retaining each an undivided one-sixth interest. That about December 15, 1911, G. M. Herron transferred to E. L. Gallinger his one-twelfth interest in the 500 acres, and on or about the 16th of December, E. L. Gallinger transferred a one forty-eighth interest to N. J. Murphy, and such transfer was made subject to the terms of the original lease between the Honakers and the Texas Company. That E. L. Gallinger, about the 16th of April, 1913, transferred a one twenty-fourth interest in said 500-acre lease to J. A. Trice and B. F. Robbins, subject to the terms of said original lease. That about the 12th of September, 1918, E. L. Gallinger assigned a further undivided interest to the land involved in this controversy to N. J. Murphy. That on or about the 15th of January, 1912, J. A. Trice and B. F. Robbins transferred to the defendant the Great Southern Oil & Gas Company an undivided two-sixths interest in the leasehold estate granted to the Texas Company, subject to the terms of said lease. That about the 26th of September, 1912, B. F. Robbins, J. A. Trice, W. L. Ramsey, G. L. Herron, L. L. Wilkins, W. P. Herron, and wife, Mrs. J. B. Honaker, surviving wife of W. B. Honaker, deceased, and the other plaintiffs transferred, assigned, and renewed for a cash consideration, and the additional consideration of development, the oil and gas lease owned by them on the 100 acres of land involved in this controversy to the J. M. Guffey Petroleum Company, a copy of which assignment is attached to plaintiffs' petition, and reads as follows:

"Know all men by these presents: That we, B. F. Robbins, J. A. Trice, W. L. Ramsey, G. M. Herron, L. L. Wilkins, W. P. Herron, Mrs. J. B. Honaker, surviving wife of W. B. Honaker, deceased, Mrs. B. A. Herron, wife of W. P. Herron, Miss Myrtle R. Honaker, Mrs. V. A. Stewart, joined by her husband, J. C. Stewart, and Mrs. W. B. Holsonbake, joined by her husband, J. R. Holsonbake, being the owners of all the oil and gas and other minerals and the rights pertaining thereto in and under the hereinafter described tract of land, for and in consideration of the sum of ten thousand ($10,000.00) dollars, eight thousand ($8,000.00) dollars of which is paid in cash, the receipt whereof is hereby acknowledged, and the other two thousand ($2,000.00) dollars to be paid in accordance with the conditions hereinafter stated, as well as the covenants and agreements hereinafter contained, to us paid by the J. M. Guffey Petroleum Company, a corporation chartered under the laws of the state of Texas, having its offices and principal place of business in Beaumont, county of Jefferson, and state of Texas, have transferred, set over, assigned, and conveyed unto the said J. M. Guffey Petroleum Company all the oil, gas, and other minerals and all rights pertaining thereto in and under the following described tract of land, to wit:

"One hundred (100) acres of land, a part of the Richard Meade survey, certificate 13/47, situated in Wichita county, Tex., with field notes as follows: Beginning at the northwest corner of the said Richard Meade survey; thence south 1,320¾ feet, a point in the west line of the said Richard Meade survey; thence east 2,206 feet; thence south 1,979¼ feet; thence east 438 feet; thence north 3,300 feet, a point in the north line of the said Richard Meade survey; thence west 2,544 feet to the place of beginning, containing one hundred (100) acres of land.

"To have and to hold the same unto the said J. M. Guffey Petroleum Company, its successors and assigns, subject, however, to the following covenants and agreements:

"The said J. M. Guffey Petroleum Company agrees to start operations for the drilling of a well upon the said above-described premises within thirty days from the date of the final execution and delivery of this contract, and to continue with due diligence the drilling of said well to completion.

"Should the said well so drilled produce oil in paying quantitles then the said J. M. Guffey Petroleum Company shall pay to the grantors the balance of two thousand ($2,000.00) dollars shall remain the property of J. M. Guffey Petroleum Company and the grantors herein shall have no claim to the said two thousand dollars nor any part thereof.

"Should oil be produced in paying quantities on the above-described premises, then the said J. M. Guffey Petroleum Company agrees to pay in addition to the ten thousand dollars consideration heretofore recited to the grantors a further sum amounting to one hundred ($100.00) dollars per acre out of one-half of seven-eighths of the oil produced on said premises; such sum to be paid as the oil is sold from the premises, and the said J. M. Guffey Petroleum Company shall in any event be liable for only so much of said sum of one hundred dollars per acre as one-half of seven-eighths of the oil produced shall be sold for, said oil to be sold monthly at the current market price in the field at the well at time of sale.

"It is understood and agreed that the W. B. Honaker estate is the owner of a one-eighth royalty of all the oil and gas produced on the said premises, and the said J. M. Guffey Petroleum Company agrees to pay to the said W. B. Honaker estate by delivery in the pipe lines to the credit of the W. B. Honaker estate the said one-eighth royalty and J. H. and H. D. Honaker are hereby designated as agent of the W. B. Honaker estate to receive, receipt for, and transact all business with reference to said one-eighth royalty."

That the last instrument by its terms was expressly made subject to the royalty interest of the W. B. Honaker estate, and was subject to all the terms of the original lease executed to the Texas Company, and the defendant the Guffey Petroleum Company had full notice and knowledge thereof. That the J. M. Guffey Petroleum Company amended its charter and changed its name to the Gulf Production Company, and thereby the Gulf Production Company became the owner of the oil and gas lease on said 100 acres, and an interest therein subject to the terms and conditions of the original lease to the Texas Company, and was bound and liable to fully develop said 100 acres of land for oil and gas, and that each of the defendants have failed and refused to develop said 100 acres. That one well was drilled thereon more than 12 years ago which was dry, and, though often requested, they have refused to drill any other well, or to do any other development work, have removed all machinery and tools from said land, have paid no rentals of any character for 12 years.

That the tools and machinery were removed with the intention of abandoning said lease, by reason of all of which the interest of defendants, and each of them, has ceased to exist and reverted to the plaintiffs, and said instruments constitute a cloud on their title. That, at the time of the transfer by the plaintiffs to the Guffey Petroleum Company of an interest in the leasehold theretofore granted to the Texas Company, the plaintiffs were in reality the sole owners of said leasehold interest, and the part thereof conveyed to the J. M. Guffey Petroleum Company, and the other defendants had no interest therein.

The plaintiffs pray for title to the 100 acres of land; that the cloud created by the leases and instruments be removed, and that all rights, title, and interest of the Gulf Production Company be forfeited and canceled, and the title vested in them; that, "in the alternative, plaintiffs ask for their damages set out herein and interest thereon, and plaintiffs further pray cumulative of all other relief herein asked that they recover all damages suffered by them, and court costs and interest, and such other and further relief as they may be entitled to in law or in equity, and for writ of possession."

The plaintiffs in open court dismissed their case against N. J. Murphy. Judgment was rendered for E. L. Gallinger on his disclaimer, and against the Great Southern Oil & Gas Company by default.

The Gulf Production Company answered by general demurrer and specially excepted to plaintiffs' petition, because the Texas Company was granted an oil and gas lease on the entire 1,734 acres of land, which lease provides that, if the grantee therein, or its successors, should drill a well and discover oil within the time limit, said leasehold estate should continue in force and effect for 20 years, and so long as minerals were produced in paying quantities, and that said lease was not divisible in reference to the acreage contained in it, and the petition fails to allege that the original grantee, or its successors, have not drilled and discovered oil, gas, or other minerals within the time limit on some part of said 1,734 acres.

The court sustained the demurrer and exception of the Gulf Production Company, and, the plaintiffs refusing to amend, judgment was rendered against them and the cause dismissed, from which judgment the plaintiffs, who are appellants here, prosecute this appeal against the Gulf Production Company.

[1] Assuming, as the law requires in passing upon the demurrers, that the allegations of appellants' petition are true, it appears that about September 16, 1910, W. B. Honaker and wife, Jane Belle Honaker, the owners, executed and delivered an oil and gas lease to the Texas Company upon the land in controversy. This instrument conveyed a determinable fee in the minerals, leaving "the

possibility of a reverter" in W. B. Honaker and his wife. On the 28th of August, 1911, W. B. Honaker, by purchase, acquired a one-sixth interest in the leasehold estate theretofore conveyed to the Texas Company. W. B. Honaker died in November, 1911, and the plaintiffs became the owners of the royalties, the one-sixth interest in the leasehold estate and the "possibility of a reverter." On September 26, 1912, the plaintiffs and the owners of the other five-sixths interest in the leasehold estate executed the instrument under which appellee holds, and under which, according to the allegations of the petition, it claims and asserts title to the subject-matter of the instrument—the oil, gas, and other minerals. For 12 years it has refused to develop, refused to pay royalties or rentals, and refused to pay the additional consideration stipulated for in the transfer.

The title conveyed to appellee, whether subject to the original lease or included the "possibility of a reverter," was granted subject "to' the following covenants and agreements": That the grantee and its assigns would, within 30 days from the delivery of the executed contract, begin operations for and diligently continue drilling until a well was completed; that, if said well produced oil, the grantee would pay to the grantors the "other two thousand ($2,000.00) dollars to be paid in accordance with the conditions" of the contract; that, should oil be produced in paying quantities on the premises, the grantee agreed "to pay, in addition to the ten thousand dollars consideration hereinbefore recited to the grantors, a further sum amounting to one hundred dollars per acre out of one-half of seven-eighths of the oil produced on said premises," in the event one-half of the seven-eighths of the oil produced should sell for that amount; that the grantee was to pay to the W. B. Honaker estate, by delivering in the pipe lines to its credit, the one-eighth royalty.

While the transaction was a venture, the instrument reveals that the purpose and intention of the parties thereto was to ascertain by development if the land contained oil in paying quantities, and, if it did, to produce the oil. If not developed, the property could be of little or no value to the grantee, its successors and assigns; there could be no possibility of the grantors receiving the balance of the consideration which was to be paid from the oil produced on the land, and the W. B. Honaker estate could have no chance of getting the royalty. Drilling one dry hole on the premises 12 years preceding the institution of this suit did not, as a matter of law, discharge appellees from the obligation to develop imposed by the contract under the law.

[2, 3] Except as to one well, there is no stipulation stating at what time additional wells shall be drilled. It is unnecessary to cite authorities holding that oil and gas in place are realty. A contract for the purchase and sale of real estate, silent as to the time of perform-

ance, gives a reasonable time in which to perform. Bush v. Merrill (Tex. Com. App.) 206 S. W. 834; Longinotti v. McShane (Tex. Civ. App.) 184 S. W. 598. The legal implication that a contract which fails to specify the time of performance shall be performed in a reasonable time is applied to contracts for the development of land for oil and gas. Aycock v. Reliance Oil Co. (Tex. Civ. App.) 210 S. W. 849; Emery v. League, 31 Tex. Civ. App. 474, 72 S. W. 603. Manifestly the appellees were obligated to use reasonable diligence to develop for oil the 100 acres of land in controversy within a reasonable time so appellants would receive their royalty if oil was found, and the grantors in the instrument would receive the additional consideration payable on the contingency of the discovery of oil. Could the appellees, by the indefinite postponement of its obligation to develop, destroy the contingency upon the occurrence of which appellants would receive their royalty, and the grantors the balance of the consideration? We think not.

"One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability, by the terms of a contract, is made to depend, cannot avail himself of nonperformance. Likewise, where a promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon which payment is contingent." 6 R. C. L. p. 945, par. 325.

"Where, from the contract, it appears that a stipulation for payment on receipt of a specified fund, or a provision indicating the source from which a fund for payment or performance is to be procured, is inserted merely for the purpose of fixing the time at which performance shall become due, such stipulations will not be regarded as evidencing conditions precedent, but performance may be demanded within a reasonable time after the fund should have been realized or the contingency from which it is to be secured should have happened." 13 C. J. p. 632, par. 701; Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184.

"Where a party to a contract undertakes to do some particular act, the performance of which depends entirely on himself, and the contract is silent as to the time of the performance, the law implies an engagement that it shall be executed within a reasonable time without reference to extraordinary circumstances. The promisor cannot postpone the time for performance of his obligation by preventing the event from occurring." 13 C. J. p. 684, par. 776; Geo. Finberg Co. v. Jamison (Tex. Civ. App.) 260 S. W. 884.

[4-7] The instrument under which appellee holds transfers realty—oil, gas, and other minerals in place. If there are no oil, gas, or other minerals under the land, appellee acquired no title, because the subject-matter of the transfer had no existence, and we are un-

able to conceive of a title to realty if there is no realty. Appellee's alleged assertion of title to the oil, gas and other minerals under the land puts it in the position of conceding their existence, for without their existence it could have no title. Under the pleadings and the instrument, its title, therefore, is subject to the payment of an additional consideration out of the proceeds of the oil, the amount of which was to be determined by the quantity of oil, but in no event to exceed $100 per acre. In the absence of a fixed time for payment, this additional consideration became due in a reasonable time. Campbell Co. v. Watson (Tex. Civ. App.) 234 S. W. 929; Bush v. Merrill (Tex. Com. App.) 206 S. W. 834. Its refusal to pay in oil after a reasonable time had elapsed entitled appellants to collect in money such part of the consideration as they would have received in oil (Empire Gas & Fuel Co. v. Pendar [Tex. Civ. App.] 244 S. W. 184), and the court was unauthorized to assume that a reasonable time had not elapsed because this was an issue of fact (Hart v. Bullion, 48 Tex. 279). Neither was he entitled to assume that appellants could not show either nominal or actual damages for the alleged breach of the contract. Cotherman v. Oriental Oil Co., (Tex. Civ. App.) 272 S. W. 617, and authorities cited; Law v. Swift (Tex. Civ. App.) 271 S. W. 106. Under their general prayer for relief and for such damages as they had suffered, the court should have heard the testimony and granted any relief they were entitled to under the facts, whether the instrument could be canceled or not.

[8] "In equity cases a prayer for general relief is as broad as the equity powers of the court, and the prayer does not control a chancellor in determining what relief shall be given. He grants just such relief as is consistent with the issues raised by the pleadings and supported by the evidence. Swope v. Mo. Trust Co., 26 Tex. Civ. App. 133, 62 S. W. 947; Coutlett v. Mortgage Co. (Tex. Civ. App.) 60 S. W. 817; Kempner v. Ivory (Tex. Civ. App.) 29 S. W. 538." Weitzman et ux. v. Lee (Tex. Civ. App.) 262 S. W. 859. See, also, Morris v. Holland, 10 Tex. Civ. App. 474, 31 S. W. 690.

The judgment is reversed, and the cause remanded.