

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00035-CV

HOPPENSTEIN PROPERTIES, INC, APPELLANT

V.

MCLENNAN COUNTY APPRAISAL DISTRICT, APPELLEE

On Appeal from the 170th District Court
McLennan County, Texas
Trial Court No. 2009-2194-4, Honorable Jim Meyer, Presiding

May 20, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This appeal and cross-appeal involve a contract dispute over office space leased by the McLennan County Appraisal District (the District) from Hoppenstein Properties, Inc. (Hoppenstein). After entering into a lease with Hoppenstein (which involved renovations to both new and old office space), the District eventually moved out of that building and purchased another building in which to office. A jury rendered judgment in favor of Hoppenstein. However, neither party was satisfied. Hoppenstein argues that the trial court should have 1) granted its motion for judgment notwithstanding the verdict

on the amount of lost rent to which it was entitled and 2) awarded it attorney's fees. The District contends that 1) the trial court should have granted its motions for summary judgment and judgment notwithstanding the verdict on the basis there was no funding for the lease after December 31, 2009, thereby bringing into effect a contract provision which specifically released it from liability, 2) the contract impermissibly created debt and was void, and 3) the trial court erred in not excusing two jurors for cause. We affirm the judgment.

*Lost Rent*

In its first issue, Hoppenstein argued it proved that the amount of damages (rent) due it was $474,638, as a matter of law. Because the jury awarded a lesser sum ($373,638), the trial court allegedly was obligated to grant its motion for judgment notwithstanding the verdict and award the greater amount. The trial court's denial of that motion constituted error, according to Hoppenstein. The issue is overruled.

We begin our discussion by referring to Hoppenstein's description of the applicable law. It stated that:

> The movant must establish both that no evidence supports the jury's answer and that the evidence conclusively establishes the answer sought in the motion. *Ponce v. Sandoval*, 68 S.W.3d 799, 805-06 (Tex. App.—Amarillo 2001, no pet.); *Campbell v. C.D. Payne & Geldermann Secs., Inc.*, 894 S.W.2d 411, 419-21 (Tex. App.—Amarillo 1995, writ denied). In other words, the movant must establish that it was entitled to a directed verdict on the issue, *Ponce*, 68 S.W.3d at 805, and that therefore the question needn't have been submitted to the jury at all. *Id.*; Tex. R. Civ. P. 301.

To that, we add a principle uttered by our Supreme Court in *City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005). There we were told that it is not necessary to have testimony from both parties before a jury may disbelieve either; yet, a jury may not

2

ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been easily controverted. *City of Keller v. Wilson,* 168 S.W.3d at 819-20. With that in mind, we turn to the record and issue before us.

Joan McCartney, an employee of Hoppenstein, testified that the total amount of unpaid rent (without late fees and taxes) due through the end of the lease term was $474,638.24. That sum purportedly included deductions for rentals paid by the District. Hoppenstein also tendered into evidence, as Plaintiff's Exhibit 1.1, its general rent ledger. The latter illustrated that the unpaid rent due, less late fees and taxes, was $418,591.27 as of November 2012. Since the lease terminated in May of 2013, another six months of rent would have been due from the District. If one was to multiply the monthly rent, *i.e.,* $9,864.53, by six and add that product to the rent indicated as due in the ledger, the total rent due and unpaid would be $477,778.39. Admittedly, that sum is slightly more than the amount to which McCartney testified.[1] To that, we add the presence of evidence indicating a third sum was due and payable. It was calculated by the District based upon entries appearing in the general rent ledger.[2] The latter depicted the receipt of rentals from the District in an amount of $129,876.64. Should one deduct that sum from the total rentals payable over the lease term (*i.e.,* 60 x 9,864.53 or $591,871.80), the outstanding amount due from the District would equal $461,995.16.

---

[1] The District conceded, via its brief, that it "does not disagree with Hoppenstein's assertion that the rental rate was undisputed and that under the Commercial Lease, the monthly rental rate was $9,864.53 a month and that the term of the Commercial Lease was for 60 months."

[2] We note the District's reference to evidence of a $19,519.20 check representing the 4th Quarter Office Rent. In referencing the check, the District attempts to fault McCartney for failing to expressly mention the item in her testimony. While the witness may not have alluded to the check, the District does not argue that the total payments entered in the rent ledger omitted the sum.

On the other hand, the jury simply awarded $373,638. How it derived that sum is unknown. We found no evidence of record from which one could reasonably infer that it was all the rentals due from the District as of the end of the lease term. Nor does the District cite us to any evidence or methodology from which the $373,638 amount can be calculated. Rather, the smallest amount payable and established by the seemingly uncontroverted evidence was that calculated by the District from entries appearing in the general rent ledger. Again, that sum was $461,995.16. Yet, that is not the amount Hoppenstein sought via its motion for judgment notwithstanding the verdict. Given this, we cannot say it carried its burden to "establish both that no evidence supports the jury's answer and that the evidence conclusively establishes the answer sought in the motion," that answer being the sum of $474,638.24.

*Attorney's Fees*

Next, Hoppenstein contends that the trial court erred in denying it attorney's fees. The latter were purportedly due it given the lease provisions and § 271.159 of the Local Government Code.[3] We overrule the issue.

Section 271.159 provides:

> Attorney's fees incurred by a local government entity or any other party in the adjudication of a claim by or against a local governmental entity shall not be awarded to any party in the adjudication unless the local governmental entity has entered into a *written agreement that expressly authorizes* the prevailing party in the adjudication to recover its reasonable and necessary attorney's fees *by specific reference to this section.*

TEX. LOCAL GOV'T CODE ANN. § 271.159 (West 2005) (Emphasis added). The lease at bar contained the following and only the following language regarding attorney's fees:

---

[3] This section was repealed effective June 19, 2009, but was in effect at the time the parties entered into the lease agreement.

"[a]ny person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, reasonable attorney's fees, and all other costs of litigation from the nonprevailing party." As can be seen, the provision does not make specific reference to § 271.159. Such was required by the plain language of the statute.

Given that the legislature selected the words of the statute and that we are bound to read the statute in a way that affords meaning to each word, *Texas Dep't. of Ins. v. American Nat. Ins. Co.*, 410 S.W.3d 843, 853 (Tex. 2012), we cannot ignore the verbiage requiring the existence of a "written agreement that expressly" authorizes the recovery of fees "by specific reference to" § 271.159. And, because the written agreement at bar does not specifically reference that statute, the trial court did not err in denying attorney's fees to Hoppenstein. Contrary to the latter's contention, a general reference to the "laws of the State of Texas" in another part of the lease does not fill the void.

*Cross-Appeal—Funding for the Lease*

Next, the District contends that it was relieved from having to perform the lease terms due to a contract provision involving the availability of funding. The clause in question stated:

> THE DISTRICT AND LANDLORD MUTUALLY AGREE THAT DISTRICT'S OBLIGATION TO PAY THE CONSIDERATION HEREIN EXPRESSED MAY BE MADE ONLY AND SOLELY FROM FUNDS AVAILABLE FOR THE PURPOSE OF THIS AGREEMENT. THE LOSS OR REDUCTION OF FUNDS BY THE DISTRICT SHALL RENDER THIS AGREEMENT NULL AND VOID AS TO THOSE PROVISIONS FOR WHICH FUNDING IS NOT AVAILABLE.

5

According to the District, this provision rendered its obligations void because funding for the agreement ceased after December 31, 2009. We overrule the issue.

There is evidence of record illustrating the coffer used to fund the District's expenses contained monies sufficient to satisfy the lease obligation. But, instead of using the monies for that purpose, the board of directors charged with disbursing or budgeting the funds opted to use them to acquire another facility. It reached that decision after the District's chief appraiser approached the board, recommended that a new building be purchased, and advised it that the District had the discretion to end the contract by simply omitting from future budgets money earmarked for lease payments. In other words, monies were available to satisfy the District's lease obligation, but the District not only opted to use them for another purpose but also swayed those in charge of their dispersal to divert them to that other purpose. Under those circumstances, it cannot be said that the funds were unavailable. *See Garrison Indep. School Dist. v. McDuffie,* 414 S.W.2d 492, 496 (Tex. Civ. App.—Tyler 1967, writ ref'd n.r.e.) (defining "available" to mean capable of being made use of, at one's disposal, or within one's reach). Simply put, they were available but used for something else.

Furthermore, we note that the conduct of the District tends to run afoul of general contract principles. For instance, where one assumes an obligation, he generally cannot excuse his non-performance by voluntarily pursuing a course of conduct that leaves him unable to perform. *See, e.g., Solomon v. Greenblatt,* 812 S.W.2d 7, 18 (Tex. App.—Dallas 1991, no writ) (stating that impossibility of performance is not available as a defense to a party that by its voluntary act created the impossibility); *Calvin v. Kolterman, Inc. v. Underream Piling Co.,* 563 S.W.2d 950, 957

6

(Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.) (stating that the impossibility of performance is not an excuse if it is subsequently occasioned by act or default of the promisor). Nor may someone avail himself of non-performance when he prevents or makes impossible the performance or happening of a condition precedent upon which his liability is made to depend. *Honaker v. Guffey Petroleum Co.,* 294 S.W. 259, 263 (Tex. Civ. App.—Amarillo 1927, writ ref'd). Similarly, where a promise is made to pay an obligation from a fund to be realized in a certain way, there arises an implied obligation to use reasonable diligence in performing the act upon which payment is contingent. *Id.* Not only did the District, through the actions of its chief appraiser, fail to use reasonable diligence in securing the lease monies, it actually lobbied against their provision as lease payments. And, now it attempts to benefit from the very conduct it undertook to prevent the occurrence of the condition upon which its liability purportedly depended. Such is not condoned under this State's jurisprudence. Just as a person accused of killing his parents is unentitled to mercy because he views himself an orphan, a party to a contract is not relieved from performing because he interfered with or otherwise prevented his own performance.

*Creation of Debt*

Next, the District contends that the lease violates article 11, § 7 of the Texas Constitution.[4] The latter states that "[n]o debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide

---

[4] The District sought both a summary judgment and a judgment notwithstanding the verdict on this issue.

at least two percent (2%) as a sinking fund . . . ." Tex. Const. art. XI, § 7.[5] We overrule the issue.

Appraisal districts are created by statute and constitute political subdivisions of the State. TEX. TAX CODE ANN. § 6.01(a)&(c) (West 2008). So too are they governed by a board of directors appointed by the taxing units that participate in the district, *id.* § 6.03(a); *In re ExxonMobile Corp.,* 153 S.W.3d 605, 611 (Tex. App.—Amarillo 2004, no pet.) and constitute entities independent from the cities and counties within their borders. *See State v. Heal,* 884 S.W.2d 864, 870 (Tex. App.—Dallas 1994), *rev'd on other grounds*, 917 S.W.2d 6 (Tex. 1996) (holding that the Dallas Central Appraisal District is a political subdivision of the State and separate and distinct from the city of Dallas). Simply put, the McLennan County Appraisal District is neither a city nor a county for purposes of the constitutional provision at issue.

*Challenges for Cause*

Finally, the District complains of the trial court's failure to grant its challenges for cause to Juror No. 11, Amy Renee Williams, and Juror No. 27, Kenna Kay Horton. We overrule the issue.

To preserve error when a challenge for cause is denied, "a party must use a peremptory challenge against the venire member involved, exhaust its remaining challenges, *and* notify the trial court that a specific objectionable venire member will remain on the jury list *before* exercising its strikes." *Williams ex rel. Williams v. Skelton*, No. 10-06-00178-CV, 2007 WL 899907, 2007 Tex. App. LEXIS 2344, at *1-2 (Tex. App.—Waco March 21, 2007, pet. denied) (mem. op.) (Second emphasis added).

---

[5] Section 5 of article 11 also provides that "no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent." Tex. Const. art. XI, § 5.

"[T]he complaining party waives any error by not timely bringing such error to the attention of the trial court *prior to* making his peremptory challenges." *Hallett v. Houston Northwest Medical Center,* 689 S.W.2d 888, 890 (Tex. 1985) (Emphasis added); *accord Hyundai Motor Co. v. Vasquez,* 189 S.W.3d 743, 759 n.74 (Tex. 2006) (reiterating the rule).

Here, the record illustrates that the trial court denied the District's challenges for cause. Thereafter, it exercised its peremptory challenges to remove jurors 11, 17, and 27. Once that happened, and immediately before the final jury was seated, counsel for the District uttered:

> As the Court will recall, the defense tried to strike Juror No. 11, Williams; Juror No. 17, Rost, and Juror 27, Horton. Those were all denied. Because of that, we had to exercise peremptory strikes for those three jurors. Had we not had to use those peremptory strikes for those three jurors, we would have struck Juror No. 14, Travis; Juror No. 16, Perry, and Juror No. 22, Kinney. I just want that noted on the record before the jury has been seated in the case and before I've been told what the plaintiff's strikes are.

Because the District notified the trial court of its complaint *after* exercising its peremptory challenges, the issue before us was waived.

Having overruled all the issues of both parties, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

9