**BARRIER v. BRINKMAN et al.**

No. 2433.

Court of Civil Appeals of Texas. Beaumont.

Oct. 12, 1934.

Rehearing Denied March 6, 1935.

Crook, Lefler & Cunningham, of Beaumont, J. W. Williams, of Port Arthur, E. A. McDaniel, of McAllen, and J. C. Hall, of Edingburg, for appellant.

Oliver J. Todd, C. S. Pipkin, and A. D. Moore, all of Beaumont, for appellees.

COOMBS, Justice.

Appellant was defendant and appellees plaintiffs in the court below, and we will designate the parties as in the trial court.

In 1928 and prior thereto plaintiffs were owners of a large amount of real estate in and near the city of Port Arthur, including valuable business property from which they received large rentals. The property was owned one-half by plaintiff H. E. Brinkman and one-half by the other plaintiffs, who are his children, Geo. C., Louis, and Amanda Brinkman, all adults. The mother of the children had died prior to 1928 and they had inherited their interest in the property from their mother's estate.

In 1928 H. E. Brinkman borrowed $125,-000 from the American National Insurance Company of Galveston, Tex., and gave his note payable in ten annual installments of $12,500 each with interest at 7 per cent. per annum. As security for the loan, plaintiffs executed a deed of trust to Shearn Moody, trustee, covering lot 12 in block 140, lot 3 in block 141, and lots 4, 5, and 6 in block 139 of the city of Port Arthur, and also two tracts of land lying outside the city. It is alleged that the property covered by this deed of trust was of the reasonable cash market value of $300,000.

The defendant, Barrier, was engaged in the real estate and rental business in Port Arthur. The plaintiffs, acting through H. E. Brinkman who managed the property for himself and his children, entered into an agreement with the defendant, Barrier, whereby he took over the management of plaintiffs' properties, and collected the rents for a commission of 2 per cent. It is plaintiffs' contention, and they so testified, that the defendant represented to them that he could and would so manage the properties and apply the rentals as to take care of the insurance company loan above mentioned out of the rents and prevent a foreclosure.

Plaintiffs lost their property by foreclosure of the mortgage of the American National Insurance Company, being unable to pay the installment of principal and interest amounting to $14,125 which came due June 4, 1930. This suit is based upon the proposition that the defendant, Barrier, caused them to lose their properties and their equities therein to the amount of $200,000. The suit is predicated upon two theories of liability as disclosed by the pleadings: One being that defendant, Barrier, breached a contract with the plaintiffs whereby he agreed to collect rentals on their properties and take care of the maturing installments, and the other that he was guilty of fraud against them in the handling of their properties, in that he obtained possession and control of their properties and their source of income with the purpose and intent of working a foreclosure of the lien, and obtaining their properties for himself.

In so far as the plaintiffs seek to plead a cause of action for breach of contract, it is in substance that defendant, Barrier, negotiated and closed with them a contract on or about February 1, 1930, by the terms of which the Brinkmans "enlarged, increased and expanded the scope and terms of the agency of the said Barrier (for the collection of rentals, as above mentioned) so that he was given authority to negotiate and as agent agreed and promised to secure and close" a contract on behalf of the Brinkmans with the American National Insurance Company, whereby the annual payments of installments and interest to be made the company on the loan would be reduced so that rentals from the property covered by the mortgage would be sufficient to pay off the indebtedness as it should fall due, after deducting the 2 per cent. commission of Barrier and $100 per month to be paid out of the rentals to H. E. Brinkman for his living expenses; that he, Barrier, represented that he knew the officers of the insur-

ance company, and that he could and would secure such a contract to be executed by the company; that he agreed to secure this agreement with the insurance company before the next installment should fall due in June, 1930; "that it was in the contemplation of the parties at the time the said agency contract was entered into that unless the said agent Barrier, did negotiate in accordance with the terms of his said agency (as he then and there represented that he could and would do) that a default would occur in the said American National Insurance Company loan, and it was then and there contemplated by the parties that if said default did occur, the plaintiffs would not be able to pay the full amount of $112,500.00 and interest, which represented the whole amount of said loan, and the plaintiffs would lose their equities therein. Plaintiffs aver that said N. M. Barrier breached the said contracts and represented to the court that he did not negotiate or attempt to negotiate with the American National Insurance Company, and aver that he made no attempt to carry out his agency contract and did not carry out the same, and although it was contemplated that plaintiffs would lose their equity if same was not done, he the said Barrier made no effort to said end." There are many other allegations scattered through the length of the pleading, all or the same general tenor as the above, to the effect that Barrier breached the contract and caused the loss of the properties; that he deceived them into believing that he was attending to said matter, and prevented their saving their properties.

The fraud plea is based upon the same transaction as the contract plea, but there are many pages of allegations, pleading acts, and conduct of the defendant, Barrier, which it is alleged show his fraudulent design and intent to deprive plaintiffs of their property. Plaintiffs' petition covers more than thirty-six pages in the transcript, and we will not undertake to set out the pleadings at any great length. Suffice it to say that the fraud alleged, and it has support in the evidence, is, in substance, that the plaintiff H. E. Brinkman, the father of the other plaintiffs, managed the properties; that both he and they were inexperienced in matters of business, which the defendant, Barrier, well knew; that while they knew Barrier, they had had no business dealings with him until the transactions complained of; that they had valuable properties which plaintiff H. E. Brinkman had managed to accumulate over a period of years by wise investment, which properties, in the very heart of the city of

Port Arthur, were large revenue bearing properties; and that they owed no debts until the American National Insurance Company loan was consummated for the use and benefit of the Seaboard State Bank & Trust Company; that defendant, Barrier, was a real estate man, knew of the great value of plaintiffs' properties, and knew of their inexperience, and saw the opportunity to cause a forfeiture of their properties and to acquire them himself, by gaining their confidence and "enmeshing himself in their affairs," to such an extent as to render them helpless and unable to protect their properties from foreclosure. It was plaintiffs' theory, as pleaded, that defendant, Barrier, meant to accomplish such purpose, and did accomplish it, by causing second and third liens in favor of others and of himself to be placed on the properties mortgaged to the insurance company, and to cause the assignments of the rentals, which was the source of the revenue of plaintiffs, to be made to him, so as to give him charge and control of their properties, which enabled him to prevent their getting money from any other source to pay off the installments of principal and interest due on the indebtedness; that his manipulations in that respect caused the plaintiffs to lose their properties. The properties mortgaged to the insurance company were alleged to have been of the value of $275,000, and plaintiffs sued for actual damages for the loss of their equities, in the amount of $155,000, and for exemplary damages in the amount of $50,000, by reason of fraud and malicious conduct of the defendant.

The suit was originally instituted on November 28, 1930, by Geo. O. Brinkman and wife, Kathryn Brinkman, Louis H. Brinkman, and Amanda Brinkman, as plaintiffs, against American National Insurance Company of Galveston, Shearn Moody, trustee in the deed of trust, N. M. Barrier of Jefferson county, James Shaw, banking commissioner, H. E. Brinkman, and several other parties not necessary to mention. At that time the insurance company had declared its indebtedness due, and advertised the properties covered by its deed of trust for sale. Later, judgment was entered for the insurance company for its debt and foreclosing its lien and decreeing it fee-simple title to the property covered. It was recited that on admission of plaintiffs that their cause of action was against N. M. Barrier, their suit was dismissed as to the other parties without prejudice to their right to prosecute their cause of action against Barrier. A trial resulted in a judgment against Barrier in the amount of $100,000.

The judgment was abstracted. That judgment was later set aside on motion of the defendant, Barrier. On the 28th day of September, 1932, the case was again tried, and on verdict of the jury convicting the defendant, Barrier, of breach of contract and of fraud, judgment was entered in favor of plaintiffs and against Barrier for $94,750, from which judgment this appeal is prosecuted.

There is a receivership matter which has been appealed to this court and consolidated with this case, which we will discuss later on in this opinion.

Since we have concluded that appellees' cause of action for fraud, and the jury's findings thereon fully support the court's judgment in their favor for the actual damages suffered by them by reason of the loss of their properties, we deem it unnecessary to pass upon appellant's assignments, some thirty-five in number, attacking the contract feature of the case and the jury's findings with reference thereto.

█ We think the evidence amply supports appellees' cause of action for fraud as pleaded by them, and as found by the jury on the issues submitted. There are four large volumes of the statement of facts, and any comprehensive statement of the evidence bearing on the question of fraud is out of the question. According to Mr. Barrier's theory of the case, his action in the premises was entirely right and proper. According to his testimony, he simply undertook to help the plaintiffs collect their rentals and manage their properties and pay off their debts.

But when the evidence is viewed in the light favorable to the findings of the jury, we think it fully supports the findings of fraud which the jury made.

The record is voluminous, the transcript of the evidence covering more than 1,000 pages. The recital of the following matters, which appear from the testimony, will be sufficient to show the nature of plaintiffs' evidence bearing upon the issue of fraud: The Brinkmans were truck farmers. The father, H. E. Brinkman, moved to Port Arthur a number of years ago and purchased property which became quite valuable as the city grew. The revenue producing portion of the property was located in the heart of the business district of the city and it was that property which was covered by the mortgage given to American National Insurance Company. It is shown that that property produced large rental revenues even during the depression.

The father, H. E. Brinkman, after the death of his wife in 1916, continued to manage the entire estate, including the interest in the rental properties inherited by the children. It appears that the children signed without question whatever contracts or papers their father requested them to sign in connection with his management of the properties. It is evident that he is a man of meager education and of somewhat limited business experience. At the time the $125,000 was borrowed from the American National Insurance Company, which was for the use and benefit of the Seaboard Bank & Trust Company, they were not in debt. The defendant, Mr. Barrier, had nothing to do with the original loan as he had not at that time become connected with the affairs of the Brinkmans. A short time after the Brinkmans negotiated the loan from the insurance company, H. E. Brinkman desired to borrow additional money for the bank and sought a loan of $35,000 from Mr. J. H. Phelan of Beaumont, proposing to secure the loan by a lien on other properties belonging to the Brinkmans not covered by the insurance company loan. Mr. Brinkman took the matter up with Hon. H. P. Barry of Beaumont, attorney for Mr. Phelan. Upon leaving the office of Mr. Barry in Beaumont, he met the defendant, N. M. Barrier, and it was in connection with the negotiating of the Phelan loan that Mr. Barrier seems to have become connected with the affairs of the Brinkmans. The Brinkmans had known him casually before but had had no business dealings with him. Mr. Barrier was then, and had been for many years, engaged in the real estate and rental business in the city of Port Arthur. The result of the negotiation with Mr. Phelan was the consummation of the loan, but it was required that in addition to the property which Brinkman proposed to mortgage as security, that a second lien be given on the properties mortgaged to the insurance company, and also that Mr. Barrier become indorser on the note. It is shown that Brinkman paid Mr. Barrier $1,000 for his indorsement. It is shown that the property covered by the first lien securing the Phelan mortgage was worth considerably more than the $35,000 loaned against it. In fact, it sold under foreclosure for sufficient to pay off the indebtedness. Mr. Brinkman made a contract with Mr. Barrier to collect his rentals and look after his properties for a commission of 2 per cent. on the rentals collected. In the meantime the first annual installment of interest and principal due the insurance company was about to become due. According to the Brinkmans, Mr. Barrier then proposed to them that he be allowed to take over the management of their properties and so collect the rentals and apply the proceeds to the payment of the insurance company debt as to take care of it. In that connection they testified, although this is denied by Mr. Barrier, that Barrier represented to them that he would secure a reduction in the amount of the annual installments to be paid the insurance company so that the rentals would be sufficient to take care of the debt and prevent a foreclosure; that he told them he was personally acquainted with the officials of the insurance company and could and would take care of the matter; and that they turned their properties over to him, giving him full charge and control for such purpose. Mr. V. J. Wistner, an attorney of Port Arthur, and Mr. Barrier did obtain a reduction in the amount of annual installment to be paid the insurance company. In the meantime, when the installment of principal and interest became due, the Brinkmans did not have enough money to meet it and they undertook to raise the money. They secured a loan of $900 from their attorney, V. J. Wistner, raised $6,500 among themselves, and Mr. Barrier agreed to loan them $9,000 and take an assignment of their rents under an assignment which permitted him to collect the rents for a commission of 2 per cent. until he should be repaid his loan. He also required that they give him a third lien on the property which had been mortgaged to the insurance company. Upon the trial it developed that Mr. Barrier did not remit $9,000 to the insurance company, but paid to the company $6,554.52. He admitted this upon the trial. It was shown that he collected from the rentals the full $9,000 represented by the note, and that the difference between the amount of the note and the amount which he remitted to the insurance company he split three ways, paying $615.59 to Mr. Wistner, who had acted as attorney for the Brinkmans in some of the transactions, $733 to Mr. R. L. Frazier of Beaumont, a local agent of the insurance company, and retaining $967 for himself. Mr. Wistner stated that he got the money and simply credited it on the $900 which he had loaned the Brinkmans. When the Phelan loan came due, the Brinkmans were unable to pay it and it was extended for a period of one year. It is shown that Brinkman paid Mr. Barrier $1,053, in connection with this renewal, and that this was split between Mr. Barrier and Hon. H. P. Barry, Mr. Phelan's attorney, each receiving $526.50. This was testified to by both Mr. Barry and Mr. Barrier.

With regard to the effect which plaintiffs contend was produced by Mr. Barrier's participation in their affairs and, as they contend, his causing the second and third liens to be placed upon the property mortgaged to the insurance company, their evidence tended to show that the giving of the second lien to Phelan and a third lien to Mr. Barrier himself and the indorsing of the Phelan note by him was to complicate their title which, coupled with the assignment of the rentals to Mr. Barrier, would place him in complete control of their properties and the source of their revenue. That such second and third liens were in violation of the terms of the first mortgage lien of the insurance company, as Mr. Barrier knew. Their evidence tended also to show that Mr. Barrier had a contract prepared for them to sign which would have given him complete control of their properties with power of sale and providing a 25 per cent. commission on sales made by him. This contract H. E. Brinkman refused to sign and Mr. Barrier denies that he participated in the drafting of such contract, but there is other evidence ample to warrant a finding that he did participate in it. It was at the time of this final transaction, that is, the tendering of the contract to Brinkman, which he refused to sign, that he employed counsel, and shortly afterwards this suit was instituted. The evidence fully warrants the inference that up to that time the Brinkmans had fully relied upon Mr. Barrier to manage their business for them. He had been collecting their rentals and depositing them in the bank in his own account and had made the remittance to the insurance company above mentioned.

It appears that in an effort to save the properties from foreclosure, as the 1930 installment due the insurance company came due in June, Brinkman made an arrangement with Mr. Harry Swan, a real estate man of Port Arthur, to subdivide into town lots the 40-acre homestead tract of George Brinkman. Mr. Swan testified that he proceeded with the plan, went before the city commission, and got approval of the addition, but that Mr. Barrier came to see him twice and informed him that the property was mortgaged and that he, Swan, could not handle it. In this connection it is shown that Barrier had a deed of trust lien on that property also to secure his $9,000 loan, in addition to the assignment of the rentals, and that the Phelan deed of trust also covered it. Mr. Swan testified that except for these mortgages he could have subdivided the property and sold lots and raised the money necessary to meet the installment of indebtedness due the insurance company, but debtedness due the insurance company, but

that the existence of the liens on the property so complicated it that he could not handle it. It is shown that as early as May of that year Mr. Barrier had collected from the rentals of the Brinkman properties sufficient to repay all of the money which he had actually advanced to the insurance company for the Brinkmans, and that by August of that year he had collected in rentals enough to repay him the full face of the $9,000 note and interest. It is shown that the insurance company did not declare the maturity of its loan until November. It was further testified by Mr. Swan that the Brinkmans attempted to arrange an assignment of the rentals to him in order that they might be pledged to raise money to meet the matured installment of the insurance company note; that he knew what rentals the properties were bringing in as he saw the monthly statements; and that he could have repaid the money by an assignment of these rentals, but that Mr. Barrier refused to release his assignment of the rentals and that he, Swan, was unable to do anything with the proposition. Yet, as we have mentioned above, it is shown that at the time this took place Mr. Barrier had been fully repaid not only the actual money which he had advanced to the Brinkmans but the full face of the note which he had. It is further shown that he collected more than $3,000 of rentals over and above his note before the foreclosure was finally made, deposited it in the bank in his own account, and, although repeated demand was made upon him for it, that he refused to surrender or pay over the money to the Brinkmans in order that they might have the use of it in their attempt to raise the money to meet the installment due the insurance company. Mr. Barrier's explanation of his retaining this money is that he was indorser on the Phelan note and was holding the money to apply on that note.

The insurance company officials testified that they were inclined to be lenient with Mr. Brinkman and that they would have accepted payment of the unpaid and past-due installment and interest at any time before November 4, 1930, when they finally elected to mature the loan and foreclose the lien. As said above, it is shown that the existence of the second and third liens on plaintiffs' properties so complicated the matter of handling them that, according to Mr. Swan, nothing could be done by way of using the assets of the Brinkmans to raise money and prevent foreclosure. In that connection Mr. Barrier himself admitted that when he took an assignment of the rentals for securing his $9,-

000 note and took the mortgage on the Brinkman property, including the deed of trust on the 40 acres, which the Brinkmans sought without avail to subdivide, that he agreed with the Brinkmans not to record his lien, but that within three days after he got it he placed it on record in Jefferson county. No reasonable explanation whatever is given of this conduct. The assignments of the rentals alone were more than ample to fully protect Mr. Barrier on his loan.

Mrs. Alma Ware Crosby, a resident of Beaumont, who appears to have been an entirely disinterested witness, testified that some time between the 1st of March and the middle of the summer of 1928, she had a conversation with Mr. Barrier in his office in Port Arthur. She was the representative of the Jefferson Standard Life Insurance Company and went to see Mr. Barrier in regard to some loan that her company was negotiating. She stated the substance of Mr. Barrier's conversation with reference to the Brinkmans, as follows: "And he told me he just arranged a loan, or had something to do with it for Mr. Brinkman; that he had gotten Mr. Phelan to take a second lien; and he seemed pleased over it; he said he had endorsed it, and that Mr. Brinkman had paid him $1000 to endorse the second lien; that if he (Brinkman) had known it, he (Barrier) would rather endorse it than not, as he would control the loan; that the Brinkmans were not good business people, and if they fell down on the loan he could own the property some day, and he said it was worth around a half million dollars; that the loan against it was not half, I think he said around $180,-000.00; that he seemed to think the loan wasn't half the value of the property. I said to him, 'Well, you'll have to pay it off', and he said, well, with his credit he could get a new loan on it; that he and his boys were rental people and they could work the property out."

It is fully established that the Brinkmans were powerless to save their properties from foreclosure and, as a result, lost them. As we have said above, it was plaintiffs' theory that this was brought about deliberately by the defendant, Barrier, with the intent to force a sale of their properties and purchase them in for himself. Appellant urges that there is no evidence of such purpose and intent as defendant did not buy the properties nor make any attempt to do so. In this connection it should be borne in mind that the foreclosure of the insurance company lien did not take place until after this suit was filed seeking damages from the defendant, Barrier, for his alleged fraudulent conduct in the handling of the plaintiffs' affairs.

The above is but a brief recital of a few of the salient facts which fully warrant the inference which the jury made in answering the issues of fraud. In response to the fraud issues, the jury found: (1) That the acts and conduct of the defendant, N. M. Barrier, toward the plaintiffs were fraudulent; (2) that the plaintiffs sustained damages by reason of the fraud; (3) that the plaintiffs' properties, lost to the American National Insurance Company through the foreclosure, had a market value in excess of the obligations owing by the plaintiffs at the time the properties were lost; (4) that their properties lost to the insurance company had a market value at the time of their loss in excess of the obligations against them, in the amount of $79,750; (5) that the plaintiffs lost their properties mortgaged to the American National Insurance Company by reason of said fraud.

Appellant's contention that the issues of fraud found against him by the jury are without support in the evidence is overruled. The fraud issue was clearly made by pleading and proof.

We fully agree with appellant's legal proposition that, to establish actionable fraud, there must be representation of existing material facts, which representations were untrue at the time made; or, where it relates to future performances, there must be a false promise to do something in the future, with no intention at the time the promise is made of performing it; that such representations or promises were made with intent to deceive the opposing party, and induce him to act; and that the injured party did in fact rely upon such false representations or promises, to his injury. 20 Tex. Jur. 17; Avery Co. v. Harrison Co. (Tex. Com. App.) 267 S. W. 254; Chicago, T. & M. C. Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Baines v. Mensing Bros. & Co., 75 Tex. 200, 12 S. W. 984; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660; Wilson v. Jones (Tex. Com. App.) 45 S. W.(2d) 572; Moore v. Moore (Tex. Civ. App.) 259 S. W. 322, 323.

We think the jury were fully warranted from the evidence in believing that Mr. Barrier did represent to the plaintiffs that, if allowed to handle their properties, he would undertake to save them from foreclosure, and by proper collection and application of the rentals and by securing reduction in the

amount of the installments due the insurance company, succeed in preventing a foreclosure; that the Brinkmans relied upon his promise and representations; that the rentals were assigned to him and he was given charge and control of their properties for that purpose. As to what his secret intent and purpose was, must of necessity be deduced from his acts and conduct. As we have shown above, the jury were warranted in inferring that he did not have the purpose and intent of saving the properties for the Brinkmans, but in fact intended to complicate their title and cause the loss of the properties, as charged by the Brinkmans, and that his conduct in the premises caused them the loss of their properties. The evidence fully established actionable fraud. Numerous authorities might be cited; see the following: Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Burch v. Smith, 15 Tex. 219, 223, 65 Am. Dec. 154; Horton v. Smith (Tex. Civ. App.) 145 S. W. 1088; Wortman v. Young (Tex. Civ. App.) 221 S. W. 660.

■ With the exception of the testimony of Mrs. Crosby, the evidence is, of course, circumstantial as to what Mr. Barrier's purpose and intent was. But, as said by Judge Wheeler in Burch v. Smith, supra: "It is not, in its nature, discernible by the direct evidence of the senses; and is usually so covert and concealed, or is attended with such attempts at concealment, as to be incapable of proof otherwise than by circumstantial or presumptive evidence. Its existence, in a given case, may be proved, either by intrinsic evidence of unfairness in the transaction itself, or by evidence of facts and circumstances attending it, which, by the ordinary tests by which we judge of the motives to action appear inconsistent with an honest purpose. And when it is said that fraud cannot be presumed, it is not meant that the presumption of fraud may not arise, and be legitimately deduced by a jury from such evidence; but only, that it is not to be assumed of a transaction, that it is fraudulent, in the absence of proof afforded by intrinsic evidence of unfairness in the transaction itself, or extrinsic facts and circumstances leading to that conclusion."

■ The court submitted the issue of exemplary damages by the following issue:

"Special Issue No. 10: If you have answered both questions No. 8 and No. 9 in the affirmative, and only in such case, you will answer the following question:

"What amount, expressed in dollars and cents will make compensation to the plaintiffs and H. E. Brinkman for the damages sustained by them by the fraud of the defendant N. M. Barrier?"

In the fore part of the charge, the court instructed the jury: "Exemplary damages are those given in the discretion of the jury, in addition to compensation for loss sustained, as a punishment' for the acts or the wrong done, when said acts are aggravated by evil motive, malice, or fraud."

The submission of exemplary damages as above was clearly erroneous. While the court's instructions define such damages as being in the nature of punishment, the issue as submitted does not limit the jury's consideration to the matter of punishment. In so far as the judgment of the trial court awards exemplary damages in the sum of $15,000, the judgment will be reversed, and the issue of exemplary damages remanded for a new trial.

■ Appellant complains of the action of the trial court in overruling his plea in abatement. The plea in abatement was based on the proposition of the misjoinder of causes of action, in that the plaintiffs alleged that the loss of their properties was occasioned by a breach of contract by Barrier, and also that such loss was occasioned by the fraud of Barrier. The plea in abatement was properly overruled. The causes of action pleaded for breach of contract and for fraud were based on the same facts and in effect amounted to alternative pleas.

■ By several propositions appellant contends that the evidence shows no proper measure of damages for loss of plaintiffs' properties, in that it was not shown that said properties had a market value at the time of their loss. The record shows that the insurance company elected to declare its entire indebtedness due and to proceed under its deed of trust, on November 4, 1930; and that the insurance company acquired title in fee simple to said properties by judgment of the district court of Jefferson county, entered March 1, 1932. Three witnesses, Ira Avant, Harry R. Swan, and W. J. Burch, testified concerning the valuation of the properties covered by the insurance company deed of trust, the loss of which forms the basis of this suit. All three qualified as experienced real estate men of the city of Port Arthur. The three of them made an appraisal of the property on December 10, 1930, and gave the

properties at that time a total value of $275,-000. They each testified on the trial that such value was to the best of his knowledge and belief the reasonable value thereof on December 10, 1930. Mr. Avant testified that the property was probably worth some less during 1931, but he could not say what the sale value was, because no large sales were being made. Mr. Swan said that the actual value of the property throughout 1931 would be very little less than the value in 1930 when the appraisal was made, but he would not attempt to fix a sale value on the property, as no sales were being made during 1931. Mr. Burch corroborated the testimony of the other witnesses. We think the value of the property was sufficiently shown. The total amount of indebtedness foreclosed against the property was $156,546.91, or $118,453.09 less than the value of the property as fixed by the witnesses as of December 10, 1930, whereas the jury found that the value of the properties exceeded the indebtedness against it by $79,750. We think the amount of damages thus assessed by the jury is amply supported by the evidence.

### On Receivership Feature.

When the plaintiffs obtained their first judgment of $100,000 against the defendant, mentioned in the early part of this opinion, they abstracted the judgment. This judgment was obtained June 29, 1932, and promptly abstracted by the plaintiffs. By two deeds dated June 18, 1932, and an assignment dated June 27, 1932, but which instruments were not recorded until some time afterward, the defendant, Barrier, conveyed valuable properties to his daughter, Mrs. Miriam B. Hall. One deed, dated June 18, 1932, conveyed to her some thirty-five lots in the city of Port Arthur as well as some outside acreage. The other deed dated on the same day conveyed to her three lots and about twenty-one acres acreage property. The assignment, dated June 27, 1932, conveyed and assigned to her some fourteen vendors' lien notes of an aggregate face value in excess of $44,000. These conveyances appear to have conveyed to Mrs. Hall all of the properties standing in the name of the defendant, N. M. Barrier. Each of the instruments recites a consideration of "$10.00 and other valuable considerations" "paid by Mrs. Miriam B. Hall out of her separate estate." By deed dated September 16, 1932, Mrs. Hall, joined by her husband, J. C. Hall, conveyed one of the tracts, about seventeen acres, to A. W. Taylor, who by deed dated the same day conveyed it to J.

C. Hall. In the meantime the plaintiffs instituted this "receivership suit" in the Sixtieth district court on July 5, 1932, to set aside said conveyances as fraudulent, setting up that they had obtained the $100,000 judgment and abstracted it, and that it constituted a lien upon said properties in their favor. The petition recited that said properties were the community property of N. M. Barrier and his deceased wife, Mrs. Eva Barrier; that plaintiffs' cause of action and debt arose during the lifetime of Mrs. Barrier; that Mrs. Miriam B. Hall was executrix of the estate of her mother. Mrs. Hall, individually and as executrix, and her husband, J. C. Hall, and N. M. Barrier were made parties defendant. The petition prayed, first, that the conveyances be canceled and annulled and held for naught, and, second, that judgment lien be established against the entire interest of N. M. Barrier and his deceased wife, Mrs. Eva H. Barrier, and in the alternative against N. M. Barrier alone; and, third, that the court appoint a receiver for said properties therein described, as well as other properties of N. M. Barrier, and prayed for a bill of discovery to be issued, to find out what other properties were held by said N. M. Barrier. Before action was had in this proceeding, the trial court granted a new trial, setting aside the $100,000 judgment. The main case was retried, resulting in the $94,750 judgment from which this appeal is prosecuted. That judgment was entered the 14th day of October, 1932.

Defendant having perfected his appeal without supersedeas bond, plaintiffs caused execution to be issued and levied on the properties which defendant, Barrier, had conveyed as above mentioned and the sheriff advertised the same for sale February 7, 1933, to satisfy the judgment of $94,750. On January 16, 1933, Mrs. Miriam B. Hall, individually, and as independent executrix of the estate of Eva H. Barrier, deceased, and J. C. Hall, filed an amended original answer and cross-action in the suit originally filed by the plaintiffs against them to cancel the conveyances as above mentioned. They impleaded W. W. Richardson, as sheriff, and E. B. Bell, his deputy. Mrs. Hall alleged that she was the owner of all the properties levied on, except a few items which it is not necessary to mention; that she owned same by virtue of conveyances to her by N. M. Barrier for valuable consideration prior to the judgment; that N. M. Barrier had no interest in said properties. Cross plaintiffs further alleged various grounds of invalidity of the

judgment under which the execution was issued, and also pleaded that N. M. Barrier had filed his appeal bond and that the case was on appeal in this court and the judgment was not final. They also alleged that lots 4, 5, and 6 in block 173 of the city of Port Arthur, levied on by the sheriff, was the homestead of N. M. Barrier prior to the conveyance of same to Mrs. Miriam B. Hall. They prayed for a temporary injunction restraining the sheriff and his deputy from selling said property pending the suit, and that the sheriff and his deputy be cited, and that upon a final hearing the temporary injunction be made final, and the sheriff and his deputy perpetually enjoined. The temporary writ of injunction was granted and the cause set for hearing on January 20, 1933. On said date the plaintiffs filed their reply to the application for injunction, moving to dissolve the same, and made application for the appointment of a receiver, in which they pleaded their judgment, alleged that said Barrier had appealed by appeal bond only and had filed no supersedeas or affidavit in lieu thereof, and that they were entitled to have their execution satisfied. They further denied the interest of the cross plaintiffs in the properties and alleged that the conveyances by N. M. Barrier were fraudulently made; they then prayed that a receiver be appointed to take said properties in charge, to be held by him and administered and applied to the payment of plaintiffs' debt, and that the injunction be dissolved.

On the 27th day of January, 1933, the court entered judgment, staying the sale of the properties by the sheriff, and appointing Travis Lambert as receiver of the properties, directing him to take charge of all of the properties levied on by the sheriff as belonging to N. M. Barrier, except the homestead, which should be left in the possession of the said N. M. Barrier for occupancy until the further order of the court, and said N. M. Barrier was enjoined from selling or placing any encumbrances on said homestead. It is recited in the judgment that the original judgment above mentioned had not been superseded; that title to the property which had been levied upon is in dispute, and uncertain as to the question of whether it is subject to execution; that the defendants have heretofore made sales of parts of said community estate; and that it is contended by the plaintiffs that said sales are void because fraudulent and for the purpose of avoiding the payment of the obligation, all of which issues are to be determined on the final hear-

ing hereof, and it is charged that unless said properties are taken into the possession of the court they will be further dissipated; and it is found that there is a probability that such will be the case, and that the appointment of a receiver is necessary for the preservation of said title to said property and for the purpose of holding the same for distribution to the parties who are entitled to receive them on final hearing.

The bond of the receiver was fixed at $25,000, which he gave, and took the oath as required by law. The cross plaintiffs prosecuted an appeal from that order to this court, and by previous order the case was combined with the main case which we have just discussed above. Appellant's contention that the receivership was improperly granted is not well taken. Several propositions urged by the appellants are based upon a contention that plaintiffs' judgment gave them no lien on the properties and they were not entitled to have them taken into receivership. Thus it is urged that for plaintiffs to have any lien on the properties so as to defeat the conveyances by N. M. Barrier to his daughter, it was necessary for the plaintiffs to show that they had a debt owing to them by N. M. Barrier at the time the conveyances were made, and, since no final judgment had been obtained, no debt was owing.

This contention entirely overlooks plaintiffs' theory that said conveyances were simulated and that in truth and in fact the properties involved still belonged to the defendant, N. M. Barrier, Mrs. Hall being a mere trustee of the legal title. As above mentioned, the appellant, N. M. Barrier, prosecuted his appeal from the judgment of the trial court in the main suit by appeal bond only. He did not supersede the judgment against him. Therefore, the judgment was not suspended and plaintiffs were entitled to their writ of execution. Vernon's Ann. Civ. St. art. 2268. Plaintiffs' suit to set aside the conveyances and subject the properties to the payment of their judgment conferred upon the court jurisdiction to grant the receivership by virtue of the statute. Article 2293. Upon the sworn pleadings and proof the trial court found in substance that plaintiffs had a probable interest in the property and that the property was in danger of being lost. Bond-Reed Hardware Co. v. Walsh (Tex. Civ. App.) 181 S. W. 248.

Moreover, appellant himself invoked the equitable powers of the court by seeking to enjoin the sheriff's sale. In granting their

prayer to thus stay the sale, the trial court had the right, under its broad equitable powers, to preserve the interests of all parties by appointing a receiver to take charge of the subject-matter of the litigation and preserve it pending final determination of the rights of the litigants thereto. Under the allegations and proof, it is plain that had this not been done, the Brinkmans, in case they succeed in finally obtaining final judgment against the defendant, Barrier, might be left with no means of satisfying their judgment and the successful culmination of their suit thus rendered a barren victory by reason of defendant, Barrier, having placed all of his properties beyond their reach. By virtue of the receivership, the rights of all parties can be preserved and protected pending final determination of the main issue. Swope v. Missouri Trust Co., 26 Tex. Civ. App. 133, 62 S. W. 947, 949; Citizens' State Bank v. First National Bank, 56 Tex. Civ. App. 515, 120 S. W. 1141; City National Bank of Dallas v. Dunham, 18 Tex. Civ. App. 184, 44 S. W. 605, 607.

The action of the trial court in granting the receivership is in all things affirmed.

On the main case, that portion of the judgment which awards exemplary damages in the sum of $15,000 is reversed and remanded for a new trial. The judgment of the trial court, in so far as it awards actual damages in the sum of $79,750 is affirmed.