John BREWER, Jr. and John Brewer,
Appellants,

v.

L. A. TEDFORD, Appellee.

No. 6036.

Court of Civil Appeals of Texas.

El Paso.

Oct. 22, 1969.

Rehearing Denied Nov. 19, 1969.

Huffaker & Green, Tahoka, for appellants.

Stephen L. Haley, Seminole, for third party defendants Kenneth Bozeman and Corky Bozeman.

Max Ramsey, Andrews, Freeman & Curry, Seminole, for appellee.

## OPINION

FRASER, Chief Justice.

The statement and nature of the suit as set forth in appellants' brief is as follows: Each of the appellants filed separate suits in the trial court as plaintiffs against the appellee, L. A. Tedford, as defendant, for liquidated damages growing out of separate real estate sales contracts, both entered into on the 7th day of September, 1966. The respective contracts differed only in the description of the property, and the purchase price to be paid by the defendant, L. A. Tedford, with corresponding differences as to the amount of escrow deposit provided. The contract with John Brewer, Jr., provided for an escrow deposit of $10,288.-00, and the contract with John Brewer provided for an escrow deposit of $7,716.00. The appellee stopped payment on the escrow checks, and refused to consummate the respective contracts. These suits were brought by the respective plaintiffs for the recovery of the respective escrow deposits, the same being the amount of liquidated damages provided for in the contracts in the event of their breach by the defendant. Trial was had to a jury and in response to the special issues submitted, together with the answers thereto, the trial court rendered judgment in favor of the defendant, and the appellants have duly perfected this appeal.

We think it advisable, under the circumstances, to include in this opinion the resume of the jury findings as set forth in the appellee's brief:

"The findings of the jury in response to the Special Issues were in substance as follows:

"Special Issue No. 1: That prior to the execution of the contract in question, Ken Bozeman represented to the defendant, L. A. Tedford, that he would not be obligated to purchase the land at $40.00 per acre.

"Special Issue No. 2: That such representations were false.

"Special Issue No. 3: That such representations were not made to induce the defendant Tedford to execute the contracts.

"Special Issue No. 4: Not answered, no answer required.

"Special Issue No. 5: Not answered, no answer required.

"Special Issue No. 6: That the plaintiffs' agent represented to the defendant Tedford that his offer to purchase would be conditioned on Tedford's obtaining a loan which he would need on the property.

"Special Issue No. 7: That such representations were false.

"Special Issue No. 8: That such representations were made to induce the defendant Tedford to execute the contract.

"Special Issue No. 9: That the defendant Tedford relied on the truth of such representation in executing and delivering the contracts in question.

"Special Issue No. 10: That such misrepresentations was a material inducement to the defendant Tedford into entering into such purchase agreements.

"Special Issue No. 11: That the contracts sued on were delivered to the plaintiffs or plaintiffs' agents upon the condition that they would not be binding on defendant Tedford unless he could obtain a loan he needed.

"Special Issue No. 12: That the defendant Tedford used ordinary diligence in attempting to obtain such loan.

"Special Issue No. 12a: That after the use of such ordinary diligence the defendant Tedford was unable to obtain such loan.

"Special Issue No. 13: That when the plaintiff John Brewer, Jr. accepted the contract on which he sues, that he or his agents had knowledge of such conditional delivery.

"Special Issue No. 14: That when John E. Brewer accepted the contract on which he sues, that he or his agents had knowledge of such conditional delivery.

"Special Issue No. 15: That the defendant Tedford neither by his acts or conduct at any time waived the condition of his bid that it was subject to his obtaining a loan."

The record shows the basic facts to be somewhat as follows: Mr. John Brewer, Jr. was under pressure amounting, in his own words, to practically compulsion, to sell his ranch in order to pay off some debts. He employed Bozeman & Bozeman, who are real estate agents and auctioneers at Lubbock, Texas. Ken Bozeman was the father and Corky Bozeman was the son. Mr. Brewer, Jr. employed the Bozemans to auction his 2572-acre ranch in Andrews County which, in fact, made them his agents for that endeavor. On the day of the auction, appellee Tedford attended the auction along with a number of other people. Although he had never seen the ranch before, he bid $40.00 an acre, and this was his only bid and apparently the only bid made. After the auctioneer had struck off the ranch to him at that figure, the Bozeman firm immediately arranged to sell John Brewer Sr.'s ranch to Tedford for the same price, thereby becoming agents for both of the Brewers. After the auction and these activities regarding Mr. Brewer Sr.'s ranch, the appellants and their wives, the Bozemans, and a man named Mike Dent, who was the employee of the Bozemans, and Mr. Tedford all went into the house, where Dent prepared two writings which are included in the Statement of Facts under the heading, "Earnest Money Contract". These writings required Tedford to pay a total of $180,050.-00, of which $18,004.00 was payable immediately as earnest money, and another $74,744.00 cash on closing of the sales. Along about this time Mr. Tedford telephoned O. C. Elliott, described as a loan broker for John Hancock Mutual Life Insurance Company. The writings were then signed, and the Bozemans obtained Tedford's checks for the earnest money. The next morning there was a meeting in Seminole between the appellants, Corky Bozeman, Tedford, and O. C. Elliott. At that time Tedford attempted to procure a loan from or through O. C. Elliott, but eventually failed; whereupon Tedford notified appellants that he did not consider himself bound by the writings and immediately stopped payment of the earnest money checks. The record also shows that Tedford testified that Ken Bozeman asked him to make a $40.00 opening bid and assured him that he wouldn't get it, and when he did get it and the land was struck off to him, he told Bozeman it would have to be subject to a loan. A witness named Wallace testified that he heard Tedford tell Bozeman it would have to be subject to a loan if he bought it, and that Bozeman replied, "Don't worry about it, I'll get you a loan." Another witness named Robert Draper testified that he heard Tedford say, "If I can get the money * * *" and "it's subject to my getting the money". Tedford further testified that immediately following the auction, Bozeman asked him if he would like to buy the John Brewer, Sr. ranch, and that he told him he would if he could get a loan. Tedford further testified that he needed to borrow about 75 per cent of it. There was some confusion as Tedford kept referring to the $18,004.00 earnest money as $17,000. Tedford further testified that Elliott said he could loan him $17,000.00, but asked him where he was going to get the rest of the money, and Tedford replied that he didn't know, and put Mike Dent on the telephone. Elliott testified that he told Dent to put in any contracts he drew that they were subject to Mr. Tedford's being able to obtain a loan from John Hancock Mutual Life Insurance Company, and told them that they had all better come to his office the next morning. All through this controversy, Tedford steadfastly maintained that the loan he was talking about, and he said he would have to have, was a loan to pay the cash necessary to close the

deal. Appellants, on the other hand, contend that the only loan Mr. Tedford was trying to make was the earnest money loan, and that he had been assured that he could have that much money. Tedford, in substance, testified that the John Hancock Mutual Life Insurance Company was the only source he knew of from which he might get the loan necessary to provide him with the cash to close the deal; that he knew of no other place and no other means by which he could raise this amount of money which appears to have been in the neighborhood of seventy or eighty thousand dollars. The record shows that Tedford stopped payment on the checks immediately when he found that he could not raise the big money, and reminded Bozeman that he had agreed to bid on one ranch and to buy another only on the condition that he could arrange for a loan; and as stated above, he steadfastly maintained that he meant the loan necessarily required to close the deal, and not the earnest money.

Appellants' first two points charge that the court committed error in refusing to direct a verdict for the appellants on the ground that the uncontradicted testimony shows that the appellee refused to comply with a duly executed and delivered written contract and that the uncontradicted testimony shows that he could have obtained a loan had he so desired. We overrule these points as we do not find that the records support them.

Appellants' Point No. 3 charges the court with error in refusing to direct a verdict for the plaintiffs on the ground that there is no evidence to support the defendant's defenses other than testimony which violates the Statutes of Frauds and Conveyances. We have examined the record in accordance with the rules applicable to this point and its wording, and the cases dealing with the "no evidence" rule, and hold that this point must be overruled, as in our opinion there is evidence to support the defendant's defenses, and that such evidence was admissible.

■ Appellants' Points 4 through 27 charge the court with error in overruling appellants' objection to the charge on the ground that the representation alleged by Mr. Tedford (to-wit, that he would have to have a loan) constituted a condition precedent materially affecting a written obligation, and any affirmative answer thereto constituted a violation of the Statutes of Frauds and the Parol Evidence Rule. Further, in said group of points, appellants urge that the court erred in overruling their objection to the charge on the same basis, to-wit, that the Statute of Frauds and Conveyances and the Parol Evidence Rule are violated for the following reasons and in the following manner: that said issues affect a material written obligation and any material change or modification of said written contract would have to be in writing to comply with the Statute of Frauds; that the issues permit an affirmative finding that there was a conditional delivery of a written contract based on an oral condition; that the enforcement of the condition as alleged by Mr. Tedford would be a material change or modification of the written contract; that the issues permitted the jury to find that a conditional delivery was imposed upon an unambiguous contract and that said condition was ambiguous of itself, therefore permitting an oral ambiguous condition to vitiate an unambiguous written contract; that such contracts are not ambiguous and contain all the terms and conditions requisite or necessary to form the basis of a valid contract; and that there are no pleadings and no prayer based upon reformation that would support any reformation.

In answering these points we should like to state, first of all, that in our opinion the writings involved here were conditionally delivered. We make this statement and holding based upon an examination of the entire record and the briefs.

It has been held that conditionally delivered instruments do not become effective until the condition occurs. 17 C.J.S. Contracts § 64, pp. 738, 739; 32A C.J.S. Evi-

dence § 977, p. 459. We think the following quotation from 13 Tex.Jur.2d 228–29, Contracts § 83, is clearly in point and bears directly on the case before us:

"Clearly, where there is a specified condition attached to the delivery of a written contract, delivery of the instrument will not become absolute, nor the agreement effective, until the happening of the condition * * *

"The conditional delivery of a written instrument involves a question as to the mutual intention of the parties. This question may properly be resolved by the jury. Furthermore, when determining the existence of such a delivery, the condition itself, together with the true facts and circumstances of the case, may be shown by parol evidence."

It has also been held that this basic rule of contract law is applicable to contracts for the sale of land. 91 C.J.S. Vendor and Purchaser § 42, p. 894. In the last citation, the text points out that a delivery of a written contract for the sale of realty on condition is not a complete delivery until the condition has been fulfilled. See also Alaga v. Stubblefield, Tex.Civ.App., 174 S.W.2d 627, and 13 Tex.Jur.2d 228, 229, Contracts.

We now come to the point as to whether parol testimony is admissible to show conditional delivery. Appellee, throughout his defense to this lawsuit, has steadfastly maintained that the writings which he signed and delivered to the appellants never became "contracts" because of unfulfilled conditional delivery. In this respect the appellants cite a number of cases holding that the parol evidence rule is inadmissible to reform or supplement writings that admittedly became "contracts" (in the absence of a showing of fraud or mistake). We have examined these cases and feel they must be substantially distinguished from the case before us, as the plaintiff here did not seek to reform, revise, change or cancel the contracts in any way, but simply stood on his position that they never became contracts because of the terms and circumstances of their conditional delivery. It has been held in Texas that there exists an exception to the general parol evidence rule that permits parol evidence to show a conditional delivery of a writing which, although it appears on its face to be a contract, fails to become a contract because the condition was never fulfilled. 23 Tex. Jur.2d 541–42, Evidence § 365; Alaga v. Stubblefield, supra. In the Alaga case there existed a written contract purporting to obligate one party to convey El Paso County land in exchange for lands in Arizona. The maker of the contract was sued for damages for alleged breach. He defended on the grounds that it was delivered subject to certain conditions regarding the Arizona land, and that such conditions failed. It must be noted that there it was argued, as in the case before us, that parol testimony as to the conditional delivery was inadmissible, but the court held that such parol testimony was admissible and that the writing failed to become a contract.

█ Next, we must deal with the applicability of the Statute of Frauds, which requires contracts to be in writing, or at least a written memorandum thereof, and to be signed by the party to be charged therewith. Again we must deal with the rule regarding parol evidence of conditional delivery of such writings. It is our opinion and finding that a certain group of instruments, such as deeds, deeds of trust, and oil and gas leases cannot be changed or altered by parol testimony after delivery to the grantee; in other words, this type of instrument cannot be attacked by parol evidence of conditional delivery. In the case of Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097, our Supreme Court, in dealing with a conditional delivery of a promissory note, points out the above group of instruments which cannot be attacked by parol evidence as to their conditional delivery. The Supreme Court also pointed out, in Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515, that while parol evidence is admissible to show conditional delivery of other writ-

ten instruments of a contractual nature required by statute, such evidence or parol agreement is admissible only to show conditional delivery, but cannot be admitted if it is inconsistent with or varies the terms of the writing. In its opinion the Court cites several cases to illustrate its position, particularly Nelson v. Boggs, 177 S.W. 1005, 1007 (Tex.Civ.App.), and Farrar v. Holt (Tex.Civ.App.) 178 S.W. 618. The Supreme Court pointed out and noted with approval the findings in these two cases to the effect that the parol conditions there and those in said cases did not vary the writing in any prohibitive sense, but merely imposed a condition upon the condition upon which the writing would become effective, without any change of terms. For the reasons stated above, we hold that this was a permissible conditional delivery explainable by parol evidence, and not in violation of the Statute of Frauds. We are not dealing here with any of the prohibitive instruments, nor was the "condition" alleged by Mr. Tedford one which violated the Statute of Frauds or sought to reform, change or cancel the instruments themselves. Appellee's position is quite clear in that he maintains that the only condition he imposed was that he must have a loan before the papers signed and executed by him would come into legal existence. Of course, as the record shows, this did not happen, although Mr. Tedford did try to obtain a loan.

Further, it is evident that Tedford relied on representations covered in Issues 6, 7, 8, 9 and 10, as is evidenced by the jury's favorable findings on said issues. Also the jury found, in said issues, that the representations were false and constituted a material inducement.

■ We have examined the appellee's pleadings and find them adequate and sufficient to warrant the submission of the issues as submitted by the court. The case of Dallas Farm Machinery Company v. Reaves, 158 Tex. 1, 307 S.W.2d 233, is referred to for a full discussion of the matter of fraudulent representations made in order to induce a party to execute an instrument. For these reasons, and based on the authorities cited above, appellants' Points 4 through 27 are hereby overruled.

■ Appellants' Points 28 and 29 complain of the use of the word "fraud" in the charge of the court. We see no error in the court's action, as the said definition is in a portion of the charge different from that consisting of the special issues, nor is the word linked with any special issue by its wording or position in the charge. These two points are accordingly overruled.

Appellants' Point No. 30 objects to the submission of issues unless there is evidence and pleadings to show that the defendant had been damaged by any representations that may or may not have been made to him. We find no merit in this point and it is accordingly overruled.

■ Appellants' Points 31, 32, 33, 34 and 35 and 36 all complain of the court's action in permitting defendant's Exhibit No. 1 to be introduced into evidence. We find no error in these points as it has long been established that fraud, or false and fraudulent representations, may be proved by circumstantial evidence. Barrier v. Brinkman, 80 S.W.2d 365 (Tex.Civ.App. Beaumont, n. w. h.); Universal Life and Accident Ins. Co. v. Barron, 269 S.W.2d 467 (Tex.Civ.App. Dallas 1954, n. r. e.); 26 Tex.Jur.2d 90, § 119. The exhibit in question, therefore, is just one of the various circumstances necessary to complete the circumstantial picture. These points are accordingly overruled.

Appellants' Points 37 through 58 allege that there was no evidence to support the jury's answers to Special Issues 6 through 15. In Points 37 through 48 in this group, appellants assert that there was no evidence to support the answers of the jury. We

have examined the record under the rules applying to the "no evidence" rule and find that these points have no merit, as there is evidence to support them. This matter has been discussed earlier in this opinion and we deem it unnecessary to reiterate the facts and circumstances surrounding this transaction. Points 37 to 47, inclusive, are therefore overruled.

With reference to appellants' Points from 37 through 58, the record reveals that there is sufficient evidence to support the jury's answers to these issues. These points are therefore overruled.

Appellants, in Points 59 through 68, complain that there are no pleadings sufficient to support the submission of Issues 6 through 15. We have examined the pleadings in question and find them adequate and sufficient to support the submission of said issues. See McDonald's Texas Civil Practice, Vol. 2, § 5.02, page 478. Therefore, Points 59 through 68 are overruled.

Appellants cite the case of Martin v. Coastal States Gas Producing Company, 417 S.W.2d 91 (Tex.Civ.App. Eastland 1957). we do not consider this case in point, as it was a summary judgment case and was decided on a finding by the court that appellant did not raise any genuine issue of material fact by his pleadings or affidavit. We do not think that case has any application in the controversy before us. Points 59 through 68 are accordingly overruled.

■ Appellants' Points 69, 70 and 71 complain that Issues 11, 13 and 14 are duplicitous and multifarious, and further that said issues were delivered upon condition. We do not find these issues subject to objection as being multifarious or duplicitous, and the matter of whether or not the writings and checks were delivered upon condition has already been discussed and disposed of in a prior part of this opinion. For a discussion of this matter

see McDonald, Texas Civil Practice, Vol. 3, § 12.18, page 1106. These points are accordingly overruled.

■ Appellants' Points 72 and 73 object to the trial court's action in overruling appellants' objection to the submission of Issue No. 6 on the ground that the same is too vague, indefinite, general and global in nature, and permits the jury to speculate as to the nature and extent and type of loan inquired about therein. We have already discussed this matter and find no merit in these two points. They are accordingly overruled.

■ Appellants' Point 74 objects to Special Issue No. 10 on the ground that it is too vague, indefinite, general and global in nature, and that the court wrongfully uses the term "material inducement" which, claims the appellant, gives the jury no guide or yardstick and leaves them to speculate as to what would or would not be a material inducement to cause Tedford to enter into such contracts. We have been over this ground before, and we find nothing objectionable in the submission of this issue. This point is overruled.

Appellants' Point No. 75 objects to Special Issue No. 11 on the same grounds, to-wit, that it is too vague, indefinite, general and global in nature and does not set forth any of the specific terms of the alleged loan, rate of interest, length of time, etc. We do not consider this point as having any merit, because the basic issue was that Tedford had to have a substantial loan to go through with the bid and the purchase, a fact which he had made manifest before and after the papers were signed. We have held that such made the delivery of the writings and checks a conditional delivery. This condition could not be met by Mr. Tedford, as he was unable to obtain a loan sufficient to enable him to buy either of the tracts of land. The statement of facts is replete with testimony to this

effect, both from Mr. Tedford and witnesses. This point, we think, has no merit and it is accordingly overruled.

 Rule 279, Texas Rules of Civil Procedure, affords an appellant the opportunity to submit any issue or instruction that might be necessary or proper. The record here is entirely silent as to any issue requested that was refused, or any instruction requested that was denied. Further, it has been held that all issues not submitted to the jury or requested shall be considered as having been found by the trial court in support of the judgment. Dee v. Parrish, 160 Tex. 171, 327 S.W.2d 449. Appellant loses his right to complain that certain issues should have been submitted if he does not request their submission at the proper time.

In conclusion, it is clear that the auctioneer induced Tedford to make a bid that was not a bona fide bid and to purchase another tract of land as well, and in our opinion Tedford made it abundantly clear at all times that he could not purchase either tract unless he could get a loan. It is also clear that the "loan" did not mean the earnest money payment of $18,000, but a substantial loan of seventy or eighty thousand dollars. It was known on the day of the auction that Tedford could come up with the earnest money. Therefore, the meeting called for the next day at Seminole, Texas was obviously an attempt by Tedford to secure a large down payment, in which venture he was unsuccessful, thereby bringing into full play the "conditional delivery" of the writings and the checks. It is also pointed out that the appellants were not actually damaged, as they sold their land for $1.50 an acre more than the minimum price they had placed upon it.

We find that the appellants in this case have not presented any reversible error. All of appellants' points are therefore overruled, and the decision of the trial court is affirmed.